## Buckler, et al. v. Supreme Council Catholic Knights of America, et al.

(Decided May 12th, 1911.)

### Appeal from Marion Circuit Court.

1. Life Insurance—The constitution of a fraternal life insurance company, and the laws in force at the time the policy is issued, fix the rights of the parties thereunder, and control the disposition of the fund.

2. Same—Beneficiary—Where a beneficiary named in a policy of life insurance dies leaving issue, the policy being in the nature of a testamentary disposition, the issue of the deceased beneficiary takes the parent's share under section 4841, which provides that the issue of a devisee or a legatee under a will shall take under similar circumstances.

3. Same—Beneficiary—Section 4841 of the Kentucky Statutes, however, does not control where the deceased beneficiary leaves no issue; but, in such a case, the fund goes under section 655 of the Kentucky Statutes to the legal representative of the deceased beneficiary.

4. Same—Insurable Interest—A son has an insurable interest in the life of his father.

R. A. MILLER, C. S. WALKER and H. P. COOPER, for appellants.

SAM T. SPALDING and J. W. S. CLEMENTS, for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On November 1, 1904, the Supreme Council Catholic Knights of America, a fraternal organization doing an assessment insurance business, issued its policy of insurance upon the life of Dr. W E. Mattingly, whereby

it agreed to pay his son, J. S. Mattingly, $1,191.24 upon the death of the assured. The beneficiary, J. S. Mattingly, never married, and died intestate and solvent, in 1907. His mother, the wife of Dr. Mattingly, had died in 1891. Dr. Mattingly never afterwards married, and died testate and without living issue in 1910. After giving specific legacies aggregating $9,000, and several devises of realty, principally to his brothers and sisters, nieces and nephews, by the 21st clause of his will, he gave the residue of his estate to his executor to be used at his discretion, for the benefit of the worthy poor of Lebanon. His heirs at law are the appellees, who are his brothers and sisters. The appellants are the sisters and nieces of J. S. Mattingly's mother, and claim that the fund should be divided between the paternal and maternal heirs at law of J. S. Mattingly under the statute of descent and distribution. The company admitted its liability and has paid the money into court; and the circuit court having adjudged the money to Dr. Mattingly's heirs at law, the maternal kindred prosecute this appeal.

The constitution of the company provides that a member may change the beneficiary in his policy at pleasure; but Dr. Mattingly made no change in that respect, either before or after the death of his son.

When the policy was issued in 1904, section 200 of the constitution of the company provided as follows:

"In the event of the death of one or more of the beneficiaries selected by the member, before the decease of such member, if he shall make no further disposition thereof, upon his death such benefit shall be paid in full to the surviving beneficiary or beneficiaries, each sharing pro rata, as provided in the Benefit Certificate. In the event of the death of all beneficiaries selected by the member, before the decease of such member, if he shall make no other or further disposition thereof, the benefit shall be paid to the heirs of the deceased member; provided, that where the laws of a State hold that the heirs of one of the deceased beneficiaries are entitled to their share of the benefit, payment shall be made in accordance with the said State laws; and if no person, or persons, shall be entitled to receive such benefit by the laws of this Order, it shall revert to the Sinking Fund of the Catholic Knights of America."

Upon a revision of the constitution in 1907, section 200 above given, was superseded by section 190, which reads as follows:

"In the event of the death of one or more of the beneficiaries selected by the member, before the decease of such member, if he shall make no further disposition thereof, upon his or her death such benefit shall be paid in full to the direct heirs of the deceased beneficiary; and if no person, or persons, shall be entitled to receive such benefit by the laws of the Order, it shall revert to the Widows' and Orphans' Benefit Fund of the Catholic Knights of America."

It will be noticed that under section 200 the fund is to be paid to the heirs of the deceased member, while under section 190 it should be paid to the direct heirs of the deceased beneficiary, in case all of the beneficiaries named in the policy had died before the insured.

The following text is taken from 29 Cyc., 157:

"By the weight of authority, in the absence of any provision on the subject in the laws of the society or in the certificate of insurance, the beneficiary in a mutual benefit certificate has no vested right therein during the lifetime of the member, and his contingent interest therein expires on his death; hence if he predeceases the member neither his personal representatives nor next of kin nor his legatees become entitled to benefits on the member's subsequent decease. This rule, however, does not prevail in all jurisdictions, and in some it has been abrogated or modified by statute; and by the constitutions and by-laws of some societies it is likewise abrogated or modified."

Kentucky is classed with those States wherein the prevailing rule has been abrogated by statute.

The constitution of the company, and the laws of Kentucky in force at the time the policy was issued, fixed the rights of the parties, and control the disposition of the fund. Supreme Council Catholic Knights of America v. Densford, 21 Ky. Law Rep., 1574; 49 L. R. A., 776.

This case, therefore, is to be decided under section 200 of the constitution above quoted, and the laws of the State of Kentucky. It will be noticed that section 200 of the Constitution which was adopted subsequently to the decision in the Densford case, provides that, where

the laws of a State hold that the heirs of one of the deceased beneficiaries are entitled to their share of the benefit, payment shall be made in accordance with the State law. The Densford case, supra, was so decided under section 4841 of the Kentucky Statutes; whereupon section 200 was made to read so as to comply with that decision. In that case one of three beneficiaries had died leaving a child, and this court held that the policy being in the nature of a testamentary disposition, the child of the deceased beneficiary took its mother's share under section 4841, which provided that—

"If a devisee or a legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will."

Section 4841 is not, however, applicable to this case, for the reason that J. S. Mattingly left no issue.

Section 655, however, of the Kentucky Statutes, found under the general head of Life Insurance, provides, in part, as follows:

"When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same."

This statute has been construed in Hall v. Ayer's Guardian, 32 Ky. Law Rep., 291, and also in Neal's Adm'r. v. Shirley's Adm'r., 137 Ky., 818.

In the first case the policy named the wife and the two daughters of Hall as beneficiaries. The wife and one of the daughters having died before the testator, the daughter leaving a child, this court held, that in a case of that character the words "legal representatives" used in the statute, meant heirs and distributees, while the term "Representatives," as therein used meant the personal representatives of the deceased insured person; and, the child being the heir and legal representative of her deceased mother, took her mother's place as beneficiary. In other words, the expression "legal representatives" used in the policy did not indicate an in-

tention to direct its proceeds to any other persons than those named in the policy, or, in the case of their death, to such persons as would take as their heirs at law.

The facts of the Neal and Shirley case are strikingly like the facts in the case at bar. Neal insured his own life for the benefit of Anna Shirley, his mother. She died on March 22, 1909, and Neal, the insured, subsequently died June 11, 1909. The contest over the fund was between their respective administrators. In construing section 655 of the statute, the court said:

"We had before us the construction of the statute in Hall v. Ayer, 105 S. W., 911, 32 Ky. Law Rep., 288. In that case one of the beneficiaries had died before the insured. We there held that the words 'his legal representatives,' in the phrase 'the lawful beneficiary thereof other than himself or his legal representatives,' refer to the legal representatives of the beneficiary. The meaning of the statute in a case like this, therefore, is that the beneficiary, or, if he be dead, his legal representatives, shall be entitled to the proceeds of the policy against the representatives of the person effecting the insurance. The statute was plainly intended to protect the proceeds of policies of this sort against the creditors of the insured, and that protection was extended no less to the legal representatives of the beneficiary than to the beneficiary himself. The statute as thus construed necessarily excludes from any interest in the proceeds of the policy 'the representatives of the person effecting' the insurance. Under the statute the personal representative of James Neal takes no interest in the insurance policy before us. To adjudge him an interest in it would be to deny proper effect to the words of the statute."

It is clear that these two decisions are conclusive against the appellants in this case. The death of Dr. Mattingly occurred after the death of his son, who was the beneficiary—precisely the state of case that existed in Neal v. Shirley; and, under the ruling in that case, J. S. Mattingly having an insurable interest in the life of his father, his administrator takes the fund under the statute. The appellants were not prejudiced by the judgment of the circuit court, and it is affirmed.