# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LEWIS v. PALMER AND OTHERS.

### February 7, 1907.

1. FRAUD—*Insolvent Husband—Purchase by Wife—Presumption—Case in Judgment.*—If a wife purchases the property of her insolvent husband during the coverture, the burden is upon her, in a controversy between her and his creditors, to show that the consideration was derived from a source other than the husband. In the case in judgment she has successfully borne that burden. The property was sold at public auction and brought a fair price, and the fact that the wife sold off parcels of the land bought by her to meet deferred payments thereon is no evidence that the purchase price was furnished by her husband. The original purchase being valid, the title of the husband became divested, and the subsequent sales were of her property, not his.

2. LIFE INSURANCE—*Insurable Interest—Husband and Wife.*—A wife has an insurable interest in the life of her husband, and may purchase and take an assignment of an insurance policy on his life, and, upon his death, may collect the full amount of the policy regardless of what she paid for the assignment. Such a contract is not contrary to public policy.

Appeal from a decree in chancery of the Circuit Court of Brunswick county. Decree in favor of complainants as to a part of the controversy. Defendant appeals.

*Amended and affirmed.*

The opinion states the case.

*Davis & Davis,* for the appellant.

*Buford, Palmer & Eggleston* and *Turnbull & Smithey,* for the appellees.

WHITTLE, J., delivered the opinion of the Court.

The original bill in this case was filed by creditors of N. C. Lewis to set aside a deed to thirteen acres of land purchased by his wife, M. A. Lewis, the appellant, at a trustee's sale, on the ground that she acquired the property, which had formerly belonged to the husband, in fraud of their rights. Subsequently, N. C. Lewis having died, the suit was revived against his administrator, and the plaintiffs filed an amended and supplemental bill, seeking, in addition to the original prayer for relief, to set aside an assignment to Mrs. Lewis of a policy of insurance for $5,000 on the life of her husband.

The bills abound with charges of fraud, both actual and constructive, against the wife and her husband and other members of the family, founded upon the alleged existence of a systematic purpose on their part to shield his property from the payment of debts by transferring it to the wife. These charges are unequivocally denied by Mrs. Lewis in her answers to both bills, and she sets forth in detail her connection with the transactions under review.

By the decree appealed from the Circuit Court sustained her title to the real estate, but was of opinion that the assignment of the policy was fraudulent as to creditors, and decreed accordingly. From the latter branch of the decree Mrs. Lewis appealed, and the appellees assigned cross-error, under Rule IX, to the court's ruling with respect to the real estate.

A careful examination of the record fails to disclose any evidence of actual fraud on the part of Mrs. Lewis; and, with a clear apprehension of the firmly established rule that in case of the purchase of property of an insolvent husband by the wife during coverture the burden rests upon her to show by satisfactory evidence that the consideration was derived from a source other than her husband, we are constrained to concur in the opinion of the trial court that the appellant has successfully borne that burden in this instance.

The salient facts bearing upon her acquisition of the real estate are as follows: N. C. Lewis, who, at one time was a practicing physician, commanding a lucrative practice and possessing ample means to meet his obligations, during the period covering the transactions· under investigation had been broken in health and reduced to such financial straits as to necessitate his filing a petition in voluntary bankruptcy. Prior to that event he had placed a deed of trust upon the land in controversy to secure a debt of $10,000, and having made default in payment of interest the property was sold at public aution and purchased by his wife, a daughter and daughter-in-law, for an amount sufficient to discharge the incumbrance. To the cash payment of $1,000 Mrs. Lewis contributed one-third, and the remaining two-thirds were paid by her co-purchasers, she executing notes for the deferred installments, with a deed of trust on the property as security; and by agreement of the parties the title was conveyed to her. There is no evidence tending to show that the sale was not in all respects fair, nor is it suggested that the property did not bring its market value. Indeed, the fact that it sold for a fair price is attested by the circumstances that the appellees suffered it to be knocked down at that sum, and the assignee in bankruptcy, doubtless recognizing the fact that it was incumbered to its full value, asserted no claim to it in the bankruptcy proceeding. After the purchase, Mrs. Lewis sold off parcels of the land from time to time and applied the proceeds in part payment of the notes for the purchase money; and it also appears that other payments were made by her with her individual means.

The contention that the purchase price of these lots was derived from the husband is based upon an obviously erroneous theory. The original sale being valid, the title of the husband to the property was completely divested, and subsequent sales were of the wife's property and not the husband's.

We shall next consider what seems to be the principal contention of the appellees, namely, that the wife acquired the

policy of insurance from the husband and procured the assignment by the Assurance Society for the purpose of hindering, delaying and defrauding his creditors. It may be remarked of this inquiry, as of the sale of the land, that it involves no conflict of evidence.

Confining our discussion to the precise matter in controversy, it appears that in the year 1900 Dr. Lewis assigned the policy in question to the Bank of Lawrenceville as collateral security for a note made by him to the bank for $1,323.60, upon which note W. P. Rawlings, the father of Mrs. Lewis, was endorser. This loan was carried by the bank until the death of W. P. Rawlings; and in December, 1902, in pursuance of the terms of the contract embodied in the note, the policy was sold at public auction by the bank to pay the note for which it was pledged; whereupon Mrs. Rawlings, the widow and executrix of W. P. Rawlings, deceased, to protect the estate of her testator, became the purchaser at the price of $1,100, which was the loan or surrender value of the policy on the day of sale. For the purpose of realizing a sufficient amount of money to comply with the terms of sale, and also to pay an annual premium which was about due, Mrs. Rawlings discounted her individual note, endorsed by several of her sons, at the Bank of Lawrenceville for $1,258.20, and likewise deposited the policy of insurance as collateral security for its payment. In the fall of 1903, being indisposed to keep up the policy any longer, she determined to collect from the Assurance Society its surrender value and deliver it to them for concellation. Thereupon the cashier of the bank, who also represented the Assurance Society, apprised Mrs. Lewis of Mrs. Rawlings' intention to surrender the policy, at the same time agreeing, if she desired to purchase it, to procure a loan from the society for the surrender value and otherwise assist her in taking up the Rawlings note. This arrangement was accordingly consummated; and Mrs. Lewis became the assignee of the policy. She continued to pay premiums until her husband's death, in the

spring of 1905, when the society paid her the difference between the face value of the policy and the amount which she had previously borrowed from them on the faith of it.

It thus appears that both the land and the policy of insurance were sold at public auction, which afforded creditors ample opportunity to prevent a sacrifice and protect their rights by themselves becoming the purchasers. But, as remarked, it is not shown that either asset sold for less than its value. With respect to the policy, the husband had abandoned it, and the first assignee, Mrs. Rawlings, had avowed her purpose to surrender it for cancellation; so that the purchase by the wife could in no way have enured to the detriment of creditors.

The weight of authority supports the proposition that at common law the wife had an insurable interest in the life of the husband, arising from her right to a support. 1 Briefs on Law of Ins. (Cooley), 284. The rule on the subject is that in addition to creditors and sureties those closely related to the insured by blood or marriage, as parent and child, and husband and wife, also have an insurable interest in his life. Vance on Ins., pages 103, 105.

The doctrine is thus stated in 1 May on Insurance, section 102a: "Wherever there is such a relationship that the insurer has a legal claim on the insured for service or support, or when, from the personal relation between them, the former has a reasonable right to expect some pecuniary advantage from the continuance of the life of the other, or to fear loss from his death, an insurable interest exists."

Such contracts are not obnoxious to public policy when the relationship is such that the bonds of affection between the insurer and insured would naturally incline the former to foster and prolong the life of the latter, rather than to desire to shorten it. *Warnock* v. *Davis,* 104 U. S. 779, 26 L. Ed. 924; *Roller* v. *Moore's Admr.,* 86 Va. 51, 52, 10 S. E. 241, 6 L. R. A. 136.

The wife having an insurable interest in the life of the husband, Mrs. Lewis unquestionably had the right to purchase the

policy in question under the circumstances of this case. *Providence, &c., Co.* v. *Fidelity, &c., Co.,* 203 Pa. St. 82, 52 Atl. 34; *Morehead's Admr.* v. *Mayfield* (Ky.), 58 S. W. 473; *Steely's Creditors* v. *Steely* (Ky.), 64 S. W. 473.

Upon the whole case, therefore, we are of opinion that there is no error in the decree of the Circuit Court upholding the title of the appellant to the thirteen-acre tract of land; but that so much of the decree as adjudged the assignment of the policy of insurance to her fraudulent and void, as against the creditors of N. C. Lewis, is erroneous, which error this court will correct, and the decree as amended will be affirmed.

*Amended and affirmed.*