# Richmond

## MUTUAL LIFE INSURANCE COMPANY OF NEW YORK V. BOARD, ARMSTRONG AND COMPANY, CORPORATION.

### January 15, 1914.

1. **LIFE INSURANCE**—*Insurable Interest—Officer of Corporation—Loss of Services—Premium Paid by Corporation—Ultra Vires Act.*— An insurance policy taken out in good faith by the principal incorporator of a corporation, who was also its president and general manager, for the benefit of the corporation which paid the premium in order to protect the corporation and its creditors by reason of his death, is not *ultra vires* on the part of the corporation, and the "loss of services in the event of death," if real, is a sufficient interest in the life of the insured to maintain the policy in favor of the beneficiary.

2. **LIFE INSURANCE**—*Insurable Interest—What Constitutes.*—Any reasonable expectation of pecuniary benefit or advantage from the continued life of another, whether direct or indirect, creates an insurable interest in such life, though there be no claim upon the person whose life is insured that can be recognized at law or in equity. The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the assured has no interest.

Error to a judgment of the Circuit court of the city of Alexandria in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John M. Johnson,* for the plaintiff in error.

*S. G. Brent, Charles E. Plummer, C. E. Nicol* and *Gardner L. Boothe,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the plaintiff corporation to recover of the defendant life insurance company the amount of a policy issued by it for the benefit of the plaintiff upon the life of B. F. Board, its president and general manager. There was a verdict and judgment in favor of the plaintiff to which this writ of error was awarded.

The record shows that the plaintiff was a Virginia corporation, with B. F. Board, its principal incorporator, as president and general manager; that in order to protect the corporation and its creditors from any loss by reason of his death, he approached the agent of the defendant insurance company and stated that he desired to have his life insured for the benefit of the corporation; that the insurance had been solicited by the agents of other companies, and asked if the defendant wrote insurance of that kind. He was informed by the agent that the defendant company did issue such policies, and would be glad to write the policy for him. Thereupon, the policy was, in due course, issued upon the life of B. F. Board for the benefit of the plaintiff, the premium $234.25 being paid by it. Both the application and the policy state that the interest of the beneficiary in the insured was "Loss of services in the event of death."

It clearly appears that the insurance company, with full knowledge of all the facts, wrote and delivered the policy sued on, and that both parties were acting in good faith in making the contract.

We are of opinion that the demurrer to the plaintiff's declaration was properly overruled. We are further of opinion that this contract of insurance effected by the plaintiff was not an *ultra vires* act on its part, and that the "Loss of service in the event of death," as stated in the policy, was a sufficient interest to maintain the policy

in favor of the beneficiary. The principal ground upon which the defendant seeks to avoid this policy is that the plaintiff had no insurable interest in the life of B. F. Board. The deceased was the president and manager of the corporation, and had been since its organization. His relation to and knowledge of the financial and manufacturing interests of the plaintiff was such that his death could not fail to result in serious and substantial loss to its creditors and all others interested in its prosperity. Although it is well known that the leading insurance companies of the country solicit and carry the class of insurance here involved, we have been unable to find any decision directly in point. The principles, however, announced by the decisions and stated by the text-writers we think clearly show that the plaintiff had an insurable interest in the life of B. F. Board, its president and general manager.

In the case of *Mechanics National Bank* v. *Comins*, 72 N. H. 12, 55 Atl. Rep. 191, 101 Am. St. Rep. 650, it was held that any reasonable expectation of pecuniary benefit or advantage, either directly or indirectly, from the continued life of another, creates an insurable interest in such life, though there may be no claim upon the person whose life is insured that can be recognized in law or in equity. The opinion says in part: "It is hardly necessary to say that the success of a corporate enterprise may be so interwoven with the personality of its manager that its stock is taken, and money is loaned to carry it on, as much in reliance upon that personality as upon the intrinsic merit of the enterprise; and no good reason appears why a stockholder or creditor, the value of whose investment may be reasonably said to depend upon the life or health of the man at the helm, should not have an insurable interest in his life, the same as one who invests money in a partnership, relying upon the skill or experience of his co-partner, has an insurable interest in the life of the latter, or one

who equips a mining expedition has an insurable interest
in the life of him to whom its management is committed.
The creditor or stockholder, under such circumstances,
would seem to have that 'reasonable expectation of pe-
cuniary benefit or profit from the continuance of another's
life' which is held sufficient to constitute an insurable in-
terest. In such case 'the essential thing, that the policy
should be obtained in good faith and not for the purpose
of speculating upon the hazards of life,' would appear to
be present. In this view we are not prepared to say, as
matter of law . . . that the plaintiffs, who were fur-
nishing the funds to carry on the business of the George T.
Comins Company, had no insurable interest in the life of
George T. Comins, the manager, and apparently the origi-
nating and directing personality in the enterprise."

In the case of *Keckley, et als.* v. *Coshocton Glass Co.,*
and *Gainor* v. *Samo,* decided by the Supreme Court of
Ohio on June 5, 1912, and reported in 99 N. E., page 299,
it is held that, "Where a person is the owner of a large
portion of the stock of a corporation and by reason of his
skill and experience he is largely relied upon to make the
business of the corporation a success, and when, in borrow-
ing money of banks and in dealing with creditors, and in
inducing other persons to buy stock in such corporation,
he represents that he has insured his life for the benefit
of the corporation, and that the policies therefor are assets
of the corporation, such facts disclose an insurable interest
in the corporation; and such insured person and his legal
representatives are estopped from claiming that such poli-
cies are not based upon an insurable interest, or that the
amounts due thereon do not belong to the corporation."

In *Conn. Mutual Life Ins. Co.* v. *Schaefer,* 94 U. S., page
457, 460 (24 L. Ed. 251), it is said: "Indeed, it may be
said generally that any reasonable expectation of pecu-
niary benefit or advantage from the continued life of

another, creates an insurable interest in such life. . . . The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."

In the case of *Lewis* v. *Palmer, et als*, 106 Va. 522, 56 S. E. 341, the following language was used by this court: "Whenever there is such a relationship that the insurer has a legal claim on the insured for services or support, or when, from the personal relation between them, the former has a reasonable right to expect some pecuniary advantage from the continuance of the life of the other, or to fear loss from his death, an insurable interest exists."

In May on Insurance, vol. 1, sec. 76, it is said: "As to what amounts to an insurable interest, there has been much discussion in the courts, without hitherto arriving at any satisfactory definition. It may be said generally, however, that while the earlier cases show a disposition to restrict it to a clear, substantial, vested pecuniary interest, and to deny its applicability to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract, whatever act, event, or property, bears such a relation to the person seeking insurance that it can be said with a reasonable degree of probability to have a bearing upon his prospective pecuniary condition."

In Bliss on Insurance, sec. 21, page 27, it is said: "The tendency of the American decisions, especially the more recent ones, is to hold that wherever there is any well founded expectation of or claim to any advantage to be derived from the continuance of a life there is an insurable interest in that life, though there may be no claim upon the person whose life is insured that can be recognized in law or in equity."

In Vance on Insurance, page 1279, it is said: "An insurable interest exists whenever the relation between the as-

sured and insured, whether by blood, marriage or commercial intercourse, is such that the assured has a reasonable expectation of deriving benefit from the continuation of the life insured, or of suffering detriment or incurring liability through its termination."

The cases cited on behalf of the defendant are not opposed to the established principles announced by the authorities we have mentioned. In the case at bar there is not a suggestion in the record that even raises an inference that the policy was intended as a wagering transaction. On the contrary, the facts show that it was *bona fide* and consummated with the honest purpose of protecting the plaintiff against loss in the event of the death of its president and general manager. The agent of the defendant announced that his company was accustomed to issuing such policies, and requested the insured to allow him to procure the insurance for him from his company. The record shows that the death of the insured was a substantial loss to the beneficiary that cannot be repaired otherwise than by requiring the insurance company to comply with its contract. We perceive no reason why, under all the facts and circumstances of this case, the plaintiff should not thus have the right to protect itself against loss, nor do we perceive, from the facts before us, any reason for holding that the transaction is obnoxious to public policy.

We are further of opinion that the evidence is wholly insufficient to sustain the defense that the insured was insane and committed suicide as a result of such insanity. This court has already settled that question adversely to the defendant by refusing it an appeal in the case of *Jessie P. Board* v. *Mutual Life Insurance Company,* where the sole defense was suicide as a result of insanity. The evidence in support of that defense is practically the same in both cases, and it is clearly insufficient to sustain the con-

tention that the deceased committed suicide from any cause. *South Atl. Life Ins. Co.* v. *Hurt's Admx., ante,* page 398, 79 S. E. 401.

We are further of opinion that the court did not err in refusing to set aside the verdict. No other proper verdict could have been found than that which was returned.

The judgment complained of is plainly right, and must be affirmed.

*Affirmed.*