H. WURZBURG *v.* NEW YORK LIFE INS. CO. *et al.*

(*Jackson.* April Term, 1918.)

1. **INSURANCE. Insurable interest. Interest of corporation in- life of its manager.**

A manufacturing company has an insurable interest in the life of its manager, who is its guiding spirit and is largely carrying on its business.   (*Post, pp.* 61-63.)

Cases cited and approved:   Warnock, Adm'r, v. Davis, 104 U. S., 775; Keckley v. Coshocton Glass Co., 86 Ohio St., 213; Mutual L. Ins. Co. v. Board Armstrong & Co., 115 Va., 836.

Case cited and distinguished:   Lane v. Lane, 99 Tenn., 639.

2. **INSURANCE. Insurable interest. Extinguishment of interest.**

Where a manufacturing company took out a valid policy on the life of its general manager, who later severed his connection with the company, and it paid all premiums until his death, it was entitled to the whole of the insurance.   (*Post, pp.* 63-66.)

Cases cited and approved:   Marquet v. Ins. Co., 128 Tenn., 213; Snyder v. Mystic Circle, 122 Tenn., 248; Conn. Mutual L. Ins. Co. -v. Schaefer, 94 U. S., 457; Overhiser v. Mutual L. Ins. Co., 63 Ohio St., 77.

Cases cited and disapproved:   Rison v. Wilkerson, 35 Tenn., 566; Scobey v. Water, 78 Tenn., 551; Quinn v. Catholic Knights, 99 Tenn., 80; Bendet v. Ellis, 120 Tenn., 277.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—F. H. HEISKELL, Judge.

R. E. KING, for appellant.

HARSH & HARSH, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This case presents a controversy between the administrator of Seymour Wurzburg, deceased, and the Specialty Manufacturing Company, a corporation organized under the laws of Tennessee, over the proceeds of a policy of insurance issued on the life of Wurzburg.

The insurance company was made a defendant to the suit, and has paid into court the amount due on the policy.

It appears from the bill of the administrator that the deceased, Seymour Wurzburg, was the general manager of the Specialty Manufacturing Company, "and in truth and in fact largely carried on the business and managed the same and was its guiding spirit, and while he was connected with the business, the defendant the New York Life Insurance Company issued a policy of insurance upon his life in the sum of $10,000, payable to the defendant the Specialty Manufacturing Company, and this policy was secured for the benefit of the said Specialty Manufacturing Company while said Seymour Wurzburg was connected with it and carrying on and managing its business."

The policy was issued February 5, 1913, and the manufacturing company paid the premiums thereon

up to the death of Wurzburg which occurred in October, 1917.

It is charged in the bill that, after others interested in the corporation became acquainted with the details of the business, they reduced the salary of Wurzburg and thereby forced him to sever his connection with the manufacturing company, which he did in October, 1915. It is not intimated that such an event was contemplated when the policy was issued.

The deceased left a wife and several children, and his administrator seeks to recover the proceeds of this policy for them, except such a sum as would be necessary to reimburse the manufacturing company for the amount of premiums paid by it on the policy and interest upon such payments. It is said that after Wurzburg severed his connection with the manufacturing company, the said company had no further insurable interest in his life and that, as to the company, the policy of insurance became a mere wagering contract and the company was only entitled to be reimbursed out of the proceeds its actual outlay for premiums.

The chancellor rendered a decree in favor of the manufacturing company for the entire amount of the policy, and from this decree the administrator has appealed. We think the chancellor was correct.

At the time this policy was issued the manufacturing company undoubtedly had an insurable interest in the life of Wurzburg. He was, as appears from

the administrator's bill, familiar with the business in which the company was engaged, managed the same, and was "its guiding spirit," in the language of the bill.

In *Lane* v. *Lane,* 99 Tenn., 639, 42, S. W., 1058, this court adopted from the Supreme Court of the United States the following:

"It is not easy to define with precision what will in all cases constitute an insurable interest so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relation of the party obtaining the insurance, either as creditor or surety of the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. . . . But in all cases there must be a reasonable ground, founded upon the relation of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life insured, otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of assured." *Warnock, Adm'r.* v. *Davis,* 104 U. S., 775, 26 L. Ed., 924.

The supreme court of Ohio has held in a case quite similar to the one before us that a corporation has an insurable interest in the life of a large stockholder whose services were of value to the corporation by reason of his skill and experience in the

business. *Keckley* v. *Coshocton Glass Co.,* 86 Ohio St., 213, 99 N. E., 299, Ann. Cas., 1913D, 607.

The supreme court of Virginia has reached the same conclusion in a case where the corporation effected insurance on the life of its president, whose death would have resulted in a serious and substantial loss to the creditors of the corporation and all others interested in its prosperity. *Mutual L. Ins. Co.* v. *Board Armstrong & Co.,* 115 Va., 836, 80 S. E., 565, L. R. A., 1915F, 979.

We think both these cases are sound. A corporation is often quite dependent upon the service of particular officers for its prosperity. Under such circumstances a corporation has an insurable interest in the life of such an officer as the term "insurable interest" is defined in *Warnock* v. *Davis,* supra, and *Lane* v. *Lane,* supra.

Since this contract was valid when made, it did not become subsequently invalid when Wurzburg's connection with the manufacturing company ceased.

This question has been settled in principle in this jurisdiction by *Marquet* v. *Insurance Co.,* 128 Tenn., 213, 159 S. W., 733, L. R. A. 1915B, 749, Ann. Cas., 1915B, 677. In this case a policy of insurance was effected on the life of a husband for his wife's benefit. Prior to the husband's death, the wife obtained a divorce. She continued however to pay premiums on the policy until the death of her husband. Payment was resisted by the company ·on the theory that she had no insurable interest after the divorce.

This court held that the wife's interest in the life of her husband was to be tested as of the date of the original contract when "her interest in his life was that of a wife, and clearly insurable, as we have seen. The divorce did not invalidate the pre-existing valid contract of insurance." *Marquet* v. *Insurance Co.*, supra.

Rather in accord is the previous case of *Snyder* v. *Mystic Circle,* 122 Tenn., 248, 122 S. W., 981, 45 L. R. A. (N. S.), 209.

*Marquet* v. *Insurance Co.*, supra, follows *Conn. Mutual L. Ins. Co.* v. *Schaefer,* 94 U. S., 457, 24 L. Ed., 251. This case involved an insurance policy payable to a wife who obtained a divorce. The supreme court after a full consideration of the matter said that in their judgment "a life policy, originally valid, does not cease to be so by the cessation of the assured party's interest in the life insured." *Conn. Mutual Life Ins. Co.* v. *Schaefer,* supra.

And it had been held in many other cases that a divorce did not affect the wife's interest in a policy of insurance issued to her on the life of her husband. *Overhiser* v. *Mutual L. Ins. Co.,* 63 Ohio St., 77, 57 N. E., 965, as reported in 50 L. R. A., 552, 81 Am. St. Rep., 612, and cases collected in note.

The exact question before us was present in *Keckley* v. *Coshocton Glass Co.,* supra, and the supreme court of Ohio held that, although the connection of the assured with the corporation had ceased before his death, the corporation was nevertheless entitled

to collect the full amount of the policy, inasmuch as the policy was valid when issued and had been listed and used as an asset of the concern.

We can see no difference in principle between the case before us and those cases in which the wife, holding a valid policy of insurance on her husband's life, obtained a divorce prior to the maturity of the policy.

Moreover, the manufacturing company in this case is entitled to the full amount of the policy. This is true because a policy of life insurance is not now held to be a mere contract of indemnity, but is a contract to pay the beneficiary a certain sum of money in the event of death.  25 Cyc. 702; 16 Am. & Eng. Enc. of Law (2 Ed.), 843; and see review of cases in *Conn. Mutual L. Ins., Co.* v. *Schaefer*, supra and *Keckley* v. *Coshocton Glass Co.*, supra.

It follows that if a policy is valid when issued, and remains valid until the death of the insured, the beneficiary is entitled to the whole of the insurance.  See note Ann. Cas., 1913D, p. 610.

In *Rison* v. *Wilkerson*, 3 Sneed (35 Tenn.), 566, it appears from the opinion of the court that the policy was assigned "as collateral security for a note of $1,097" to a creditor.  The assignment was only made to secure the debt of the policy-holder, and as a matter of course the creditor was not entitled to retain more of the proceeds than was sufficient to discharge the indebtedness.

140. Tenn.—5]

So that *Rison* v. *Wilkerson,* supra, *Scobey* v. *Water,* 10 Lea. (78 Tenn.), 551, and that class of cases are not in point.

*Quinn* v. *Catholic Knights,* 99 Tenn., 80, 41 S. W., 343, and *Bendet* v. *Ellis,* 120 Tenn. 277, 111 S. W., 795, 18 L. R. A. (N. S.), 114, 127 Am. St. Rep., 1000, obviously have no bearing on the questions before us for determination in this case.

We conclude therefore that the decree of the chancellor was correct. The pleadings in this case are not in very good form, but none of the parties are making any point as to that and the court will not do so. The cause will be remanded to the chancery court of Shelby county for further proceedings and the execution of the chancellor's decree. The appellant will pay the costs of this court.