## Harden v. Harden.

(Decided April 29, 1921.)

### Appeal from Adair Circuit Court.

1. Beneficial Associations—Fraternal Insurance—Beneficiaries—Insurable Interest.—Under our statute of March 24, 1906, members of fraternal associations are not limited in the designation of beneficiaries to persons who have an insurable interest in their lives.

2. Beneficial Associations—Insurable Interest—Betrothal.—A betrothal gives to each of the parties to it an insurable interest in the life of the other.

3. Gifts—Delivery in General.—There can be no valid, completed gift of personal property, or of a chose in action, unless the property, or chose, or something representing it, is delivered to the donee, or to some one as the agent of the donee.

4. Beneficial Associations—Beneficiaries—When no Change In.—Where one holding a benefit certificate in a beneficiary association gives expression to a desire in the presence of the designated beneficiary, that he wants another, who is also present, to have half of the proceeds of his policy, and the designated beneficiary responds, "You may do as you please about it," and there is no delivery or assignment of the policy, either actual or symbolical, and no affirmative action of any kind or character taken, there was no change in the beneficiary.

GORDON MONTGOMERY for appellant.

JONES & GARNETT for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

On January 26, 1919, Virgil A. Harden, a young man then twenty years of age, made written application for membership in the Modern Brotherhood of America, a fraternal, beneficiary association, organized under the laws of the state of Iowa, and in said application he designated as the beneficiary of the certificate to be issued to him under the said application, in the event of his death, his wife, Lillie Harden, and thereafter on the 4th day of February, 1919, his said application was approved, and in accordance therewith there was issued and delivered to him a benefit certificate in said organization, by the terms of which the Modern Brotherhood of America, in consideration of his compliance with its rules and regulations and by-laws, promised and agreed to pay, in the event of his death, to the said named beneficiary, Lillie Harden,

after satisfactory proof of death, the sum of three thousand dollars, if she was still such beneficiary at the time of his death.

In fact, however, the said Virgil A. Harden at neither of the dates named was a married man, and Lillie Harden named in the application and certificate was then Lillie Wheeler. But at the time of the filing of the said application and issual of said certificate Virgil A. Harden and Lillie Wheeler were engaged to be married and he in good faith at that time did intend to marry her, and, in fact, did on the third day of March following.

At the time of the filing of the application and issual of the certificate Harden was temporarily in Louisville at work, but was a resident of Adair county, Kentucky, and on or about the first or second day of March, 1919, he left Louisville and went back to Adair county, Kentucky, and there on the third day of March was married to Lillie Wheeler. On the day of their marriage they went to the home of his father in Adair county, and on the 4th day of March, the day after his marriage, he was taken ill with the influenza and continued to be so ill until the 11th day of March, when he died.

When he left Louisville, Harden left his certificate of membership at the home of his brother in Louisville, where he had been living while at work in that place.

His wife remained with him at the home of his father during his illness and was there at the time of his death.

The day before his death—the 10th of March, 1919—about noon, which was about 27 hours before he actually died, and when he was in bed, he called his wife, Lillie, up to the bed and in the presence of his mother, father and brother said to her that he wanted his mother to have half of his life insurance, and his wife said, in response, "Suit yourself" or "Do as you please," and these facts are, in substance, stated by the mother, father and brother, although emphatically denied by appellant.

At the time, however, the certificate or policy was not present and nothing was said about where it was or in whose possession or custody it was, and no steps whatever were taken of any kind to notify the fraternal organization of any purpose or intention upon his part to change the beneficiary or to designate a new or different beneficiary; no directions were given by the decedent as to where the policy might be found or what was to be done with it, or that any steps should be taken looking to any

change in the beneficiary. There was neither actual nor symbolical delivery of the policy; there was no direction as to where the policy might be found; there was no instruction to any one as to taking possession of the policy or to attend to the making of the change; but there was, as testified to by the appellee, the mother, only the fact that he told his wife he wanted his mother to have half of his insurance, without taking any steps whatever to carry into execution that expressed purpose. There was no letter written to the organization notifying it of his purpose to change the beneficiary, nor was there any attempt to write or prepare such letter, nor was any one present requested so to do.

This is an action by the fraternal organization against Lillie Hardin, the widow, and Onie Harden, the mother, wherein, in substance, it sets up the facts stated, and asks that the defendants be required to interplead, and that it be determined to whom the one-half interest in the proceeds of the certificate should be paid.

The defendants answered and made the issue as between themselves as to the ownership of a one-half interest in the benefit certificate, the defendant, Lillie Harden, claiming that no such thing as alleged by the defendant, Onie Harden, ever occurred.

Upon final judgment it was adjudged, in substance, by the circuit court that the appellee, Onie Harden, the mother, was entitled to one-half of the fund arising from the benefit certificate, and from that judgment the wife, Lillie Harden, prosecutes this appeal.

Two questions are presented for decision: first, at the time of the issual of the certificate, did appellant, Lillie Harden, then Lillie Wheeler, have an insurable interest in the life of Virgil Harden and, second, accepting the evidence of the plaintiff as to what occurred at the bedside as true, did it effect a change in the beneficiary to the extent of one-half of the proceeds?

(1) That Harden and Miss Wheeler were engaged at the time of the application for and issual of the policy, is conceded, and that they were in good faith at that time engaged seems to be conclusive from the fact that within one month from the time of the issual of the certificate they were, in fact, married.

Whether a betrothal gives to each of the parties to it an insurable interest in the life of the other, is a question which does not seem to have been passed upon in this

state and which in its full scope it is not now necessary to pass upon.

The facts in this case show that Harden applied himself for the insurance and that he himself paid all the premiums that were paid thereon, and the application being to a fraternal, benefit association, under our statute he had a right to designate whomsoever he chose as the beneficiary.

It was held by this court in Hess' Admr. v. Segenfelter, etc., 127 Ky. 348, that since the act of March 24, 1906 (Acts 1906, chap. 142), members in such fraternal associations "will not be limited by statute in the designation of beneficiaries to persons who have an insurable interest in their lives."

But the Hess case was controlled by the statute in force prior to the adoption of the amendment referred to, and the court proceeded in that case to discuss at length what constituted an insurable interest in the life of another, and reviewed the authorities extensively. It quoted from the case of Warnock v. Davis, 104 U. S. 775, wherein an insurable interest was defined as follows:

"It may be stated generally, however, to be such an interest arising from the relations of the parties obtaining the insurance, either as creditor of, or surety for, the insured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and the child of his parent, a husband in the life of his wife, and the wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured, than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured."

And it likewise quoted from the case of Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, wherein it was said:

"It is well settled that a man has an insurable interest in his own life and that of his wife and children, a woman in the life of her husband, and a creditor in the life of his

debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life."

And this court then, after carefully reviewing the authorities, itself defined an insurable interest as follows:

"Although an examination of them will show various reasons for the conclusion reached, it may safely be said that the relationship of creditor and debtor must exist, or that the beneficiary must have or expect some pecuniary relief, benefit, or advantage from the continuance of the life of the insured, or the relationship growing out of ties of blood or marriage must be so close as to justify the well founded belief that loss or disadvantage would naturally and probably arise to the party in whose favor the policy is written from the death of the person whose life is insured. Generally the courts have endeavored to make insurable interest dependent on the question that pecuniary loss would presumably result to the beneficiary from the death of the insured; but where the relationship, as in the case of husband and wife, parent and child, sister and brother, is so close as to preclude the probability that mercenary motives would induce the sacrifice of life to gain the insurance, the element of pecuniary consideration is not deemed essential to sustain the validity of the policy."

It is known to all men as a matter of common experience that when two young people are engaged to be married, the affection and devotion of each for the other ordinarily operates more powerfully upon them than any other earthly consideration; that at such a time not only has the woman a reasonable expectation of pecuniary benefit from the continued life of her prospective husband, but she is looking forward to other and greater advantages, such as the making of a home and the rearing of children, and it cannot be said with any degree of reason that at such a time, in any ordinary case, mercenary or selfish motives would creep into her mind and induce her to resort to any action that would result in the loss of life of her intended.

Looking to the spirit and the purpose of the rule which generally requires that the beneficiary shall have an insurable interest, we think it cannot be doubted that when two people are engaged in good faith to be married, they each have an insurable interest in the life of the other.

Bacon's Life and Accident Insurance, 4th ed., vol. 1, sec. 300, p. 584; May on Insurance, 4th ed., vol. 1, sec. 107A, p. 191.

(2)   The certificate of membership was a chose in action, and the insured therein, it is conceded, had the right to change the beneficiary, but did what he said have, without other action or effort on his part, the effect of assigning or transferring to his mother a one-half interest in this policy, or did he by his words or conduct change the beneficiary in this certificate to the extent of a one-half interest from his wife to his mother?

There can be no valid, completed gift of personal property, or of a chose in action, unless the property, or something representing the chose in action, is delivered to the donee, or to some one as the agent of the donee.

The evidence in this case at most shows only an expression by the decedent of his desire that his mother should have half of the proceeds of his benefit certificate, and upon giving expression to such desire in the presence of his mother and of his wife, he asked the latter what she had to say about it, whereupon she said merely, "Do as you please about it," and there the whole matter stopped.

As has been stated, the policy was then in Louisville, and there was no direction or suggestion that any one should see to the assignment or change in beneficiary in accordance with his expressed wish; there was no suggestion that any one should write to the company looking to such action.   In fact, no affirmative action looking to the carrying out of this expressed wish was taken by him, or requested by him to be taken by another. It was equivalent only to an expression of what it was his desire to do and getting from his wife an expression of her acquiescence in carrying out that desire, but there was no step of any kind or character taken, either by delivering the actual or symbolical possession of the certificate to his mother or to any one for her, nor was there any conduct by the insured, or anybody else, looking to the carrying out of his wish.

The facts of this case fail to bring it within the rule laid down in the case of Lockett v. Lockett, 80 S. W. 1152. In that case a bachelor had prior to his marriage procured a policy in which his father was designated as beneficiary; thereafter he married, and after his marriage declared to his wife, in the presence of others, that the in-

surance was for her benefit and protection and actually delivered the policy to her, and she had the possession of it at the time of his death. In this case the insured had possession of the policy, although it was not in his actual custody at the time of the conversation, but he neither delivered it to his mother nor offered to do so, nor directed any one else to get it and hold it for her benefit, and nothing occurred which could be in the remotest sense suggestive of a delivery, either actual or symbolical, of the policy, and the evidence, in our opinion, fails to present a state of case which worked a change in the beneficiary. Hale v. Hale, 189 Ky. 171; 12 R. C. L. pp 934-5-6.

The judgment is reversed, with directions to enter a judgment as herein indicated.