# Richmond

JOHN H. FULCHER, ADM'R, ETC. V. OPHELIA L. PARKER, ETC.

January 13, 1938.

Present, Campbell, C. J., and Holt, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Thomas L. Woodward,* for the appellants.

*Bradford Kilby,* for the appellees.

HOLT, J., delivered the opinion of the court.

In this cause Ophelia L. Parker, in her own right, and as administratrix of her husband, William H. Parker, seeks to

recover the proceeds of three policies of insurance issued by the Metropolitan Life Insurance Company on the life of Maggie Parker, aunt of William H. Parker.

William, before marriage, lived with his aunt in her home near Suffolk. He and Ophelia were married on February 22, 1912, and thereafter, with his aunt's consent, took out and carried on her life these policies:

Policy No. I, dated April 7, 1913, with a principal payment of $220, with premiums payable at the rate of 20c per week.

Policy No. II, dated December 20, 1915, in the principal sum of $150, with premiums payable at the rate of 15c per week.

Policy No. III, dated March 27, 1921, in the principal sum of $400, with premiums payable at the rate of 50c per week.

These policies were delivered to William and remained in his possession until he was committed to the Central State Hospital. His health failed him in October, 1924. Within about a year thereafter he was sent to that asylum and died there in 1928. After he was committed, they came into the possession of his wife and remained in her possession until the death of the insured on June 19, 1931. All premiums were paid by the nephew until disability set in, after which they were paid by his wife. These are the payments made by him:

On policy No. I, 520 weeks @ 20c...............$104.00
On policy No. II, 416 weeks @ 15c..............$ 62.40
On policy No. III, 156 weeks @ 50c.............$ 78.00

And these are the payments made by his wife Ophelia:

On policy No. I, 426 weeks @ 20c...............$ 85.20
On policy No. II, 442 weeks @ 15c..............$ 66.30
On policy No. III, 371 weeks @ 50c.............$189.50

Ophelia, on the death of the insured, and for the purposes of collection, delivered these policies to the company's local agent, who forwarded them to his principal.

In the meantime, John H. Fulcher, on motion of Sheridan Parker, grandson of the insured, qualified as her administrator. As such, he contended that he was entitled to this insurance money and made claim therefor. The company elected to make payment to him and not to Ophelia Parker, and did pay to him on August 29, 1931, the full amount due, $829.49.

The right of the company to make this election is not challenged by the complainant; but she does claim that she is entitled to this $829.49 or, in any event, to the sums paid by her husband and by her as premiums with interest thereon, and that Fulcher, administrator as aforesaid, holds such sum in trust for her.

In policy No. I, William H. Parker, nephew, is named as the beneficiary. It contains this provision:

"In case of such prior death of the insured the company may pay the amount due under this policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expenses on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied."

Later, this company discontinued the practice of writing into policies of this character the name of the beneficiary, and in lieu thereof, in policies II and III, this appears:

"The company may make any payment or grant any non-forfeiture privilege provided herein to the insured, the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege

to either of them, shall be conclusive evidence that all claims under this policy have been satisfied."

These provisions now very generally appear in policies of industrial insurance and have come to be known as the "facility of payment clause."

■ "It is 'an appointment both by the assured and the beneficiary of persons any of whom are authorized to receive payment of the sum agreed to be paid. * * * The clause was for the convenience of the company to enable it to make prompt payment, with the certainty that the validity of the payment could not be thereafter questioned.' *Caveny* v. *Healey,* 94 N. J. L. 28, 109 A. 204, affirmed 95 N. J. L. 245, 111 A. 925." *French* v. *Lanham,* 61 App. D. C. 56, 57 F. (2d) 422.

■ When payment is made in good faith to any of those authorized to receive it, the company is relieved from further liability. But such a payment does not change the beneficial interest of claimants thereunder. He to whom it is made takes it subject to such rights as they may have theretofore had. He merely holds this fund in trust for those purposes to which it may properly be devoted. *French* v. *Lanham, supra; Caveny* v. *Healey,* 94 N. J. L. 28, 109 A. 204, judgment affirmed 95 N. J. L. 245, 111 A. 925, and *Ogletree* v. *Hutchinson,* 126 Ga. 454, 55 S. E. 179.

"In the former (*Caveny* v. *Healey,* 94 N. J. L. 28, 109 A. 204) it is held, in substance, that payment by the insurer to one of the class referred to in the 'Facility of Payment Clause,' did not change the original contract of life insurance by which the company had agreed to pay 'to executors or administrators of insured,' and did not change the beneficial interest in the fund, the clause affecting only the right of the company to make payment, and not the rights of the claimants among themselves. In other words, the 'Facility of Payment Clause' is solely for the convenience of the insurer, to enable it to make prompt settlement in the event of death, with certainty that the validity of such settlement could not be questioned, so far as it is concerned."

*Blanchett* v. *Willis,* 161 S. C. 83, 159 S. E. 469, 75 A. L. R. 1428.

"The cases also hold (and which is in accord with fundamental legal principles) that none of the members of the class of persons to whom optional payments may be made under the facility of payment clause could themselves sue for and recover the proceeds of the policies, since there was no obligation on the part of the insurance company to pay either of them. In other words, that the clause created no debt in their favor, but only made them the agent or trustee for the beneficiary * * *." *Metropolitan Life Ins. Co.* v. *Hightower,* 211 Ky. 36, 276 S. W. 1063, 1064, 44 A. L. R. 1158.

They, in turn, hold a fund which may come into their hands in trust for those entitled to take.

▮ Industrial insurance is designed to meet the immediate need of those usually in indigent circumstances, and to cover expenses of one's last illness, burial, etc. To that end this facility clause is intended to make their proceeds immediately available. It so happened that in the instant case this necessity did not arise, for, in addition to insurance money, there came into the hands of Fulcher, administrator, a sum sufficient to pay costs of administration, burial expenses, debts, etc., of decedent, and to leave to her heirs about $170.

The administrator contends that William had no beneficial or insurable interest in the life of his aunt; that the relationship of aunt and nephew is not sufficient. Vance on Insurance, p. 134, 14 R. C. L. 922.

In *Crismond's Adm'x* v. *Jones,* 117 Va. 34, 83 S. E. 1045, 1046, Ann. Cas. 1917C, 155, it is said:

▮ "The established principle adverted to rests upon the view, that, where the person taking out the policy on the life of another has no insurable interest in such life, and, therefore, no interest in its continuance, the transaction is a mere speculative or wager contract and is void because contrary to public policy."

This rule applies to ordinary life insurance and it is the insurance carrier who usually invokes it.

■ That is not this case. Here Fulcher, administrator, claimed under these policies. He succeeded and the full amount due thereon was paid to him. He cannot be heard to question their validity.

As a matter of fact, no beneficiary was named in policies II and III. William was named as beneficiary in policy I, but even there, under the facility clause, the insurance company reserved, under certain conditions, the right to make payment to others.

■ These policies, however, were not ordinary life policies, but, as we have seen, industrial policies, and as to them a different rule applies. When confined to their restricted field, an insurable interest is not necessary. Ordinarily no definite beneficiary is named, and when named, the insurance carrier may make payment to another, if that appears necessary in order to carry out its industrial purpose. They are designed to meet the needs of an impecunious class. They do not tend to promote crime, are not against public policy, and, as we have seen, name no beneficiary in the facility clause.

"The business of insurance is gradually expanding and the contingencies provided against and risks assumed by the insurer are constantly increasing. Each time a new field is covered its beneficial results to the people have been demonstrated. We believe the character of insurance now under consideration, if confined to the attainment of the end in view, will not prove to be an exception to past experience. We are, therefore, unwilling to apply to strictly 'industrial insurance' as herein defined, the same rule as to requirement of insurable interest of the beneficiary in the life of the assured as prevails in ordinary life insurance which has for its object more of the features of a bonus than of charity." *Metropolitan Life Ins. Co.* v. *Nelson,* 170 Ky. 674, 186 S. W. 520, 523, L. R. A. 1916F, 457, Ann. Cas. 1918B, 1182, and extended note.

Had the administrator used this fund for those purposes for which industrial insurance is ordinarily designed to meet, plaintiff would have no standing. As a matter of fact, none of it has been so used. He still holds it subject to all proper claims. How should it in good conscience be distributed?

In the case of an ordinary life policy, in which the beneficiary had no insurable interest, his rights have been defined.

"In the absence of an insurable interest, a policy of insurance on the life of another is contrary to public policy, and cannot be enforced by the beneficiary beyond the amount paid by him for premiums, expenses, and interest thereon, whether the policy be payable directly to such beneficiary, or to the assured, and be by him assigned to such beneficiary." *Tate* v. *Commercial Building Ass'n,* 97 Va. 74, head-note 6, 33 S. E. 382, 45 L. R. A. 243, 75 Am. St. Rep. 770.

Where a policy is taken out in good faith, this is a fair rule. The company should not be allowed to repudiate it and keep the premiums. He at whose instance it issued takes nothing thereunder, but simply gets back what he has paid in.

This same principle was approved in *Finnie* v. *Walker,* 257 F. 698, 701, 5 A. L. R. 831. It was there held that where a life insurance policy is assigned contemporaneously with its issue and with wagering intent to one having no insurable interest the assignee may still recover, but the recovery is for the benefit of the estate of the insured, less such sums as he has paid by way of premiums thereon. The court said:

"In endeavoring to do equity between the two parties, the appellees will have full equity administered to them by obtaining the premiums and interest and other charges which they may have invested in keeping alive these policies. Relief should not be denied the appellant because the appellees have been paid by the insurance company. They may not keep the moneys which, through error of law or fact, or both, have been paid to them by the insurance company. Because of the mistake of the insurance company, they

should not have what the law says is not their property. The right to make them account as trustees for the moneys paid them by the insurance company cannot be denied the appellant."

The analogy is not complete, but these principles in good conscience may be applied here.

Here the primary purpose for which these policies were taken out has failed. There was no need for industrial insurance as such and so their proceeds have been taken over by the beneficiary's administrator, just as he would have taken over the proceeds of an ordinary life policy. Had he been successful in contending that William H. Parker had no insurable interest in the life of his aunt, Parker would still have been entitled to the premiums actually paid and so would his widow, who had continued these payments with the knowledge and consent of the insured and, as she believed, for the benefit of her husband's estate.

The chancellor below gave to plaintiff the full value of these policies paid to Fulcher, administrator. Upon careful consideration we have reached the conclusion that it would be more equitable to return to her the premiums which she and her husband have paid, with interest; that remaining to be dealt with as a part of Maggie's estate.

The defendant relies upon the statute of limitations. This he cannot do, for he holds as a trustee. *French* v. *Lanham, supra.*

It is also said that the bill in this case is multifarious. No hard and fast rule dealing with this subject can be formulated. *Jordan* v. *Liggan,* 95 Va. 616, 29 S. E. 330.

"Where the matters in controversy are not absolutely independent of each other, although distinct, and it will be more convenient to litigate and dispose of them in one suit, the objection on the ground of multifariousness should not prevail. *Nulton* v. *Isaacs,* 30 Gratt. [726 (71 Va.)] 738; *Almond* v. *Wilson,* 75 Va. 613; *Kyne* v. *Moore,* 1 Sim. & S. 61; *Story's Eq. Plead.,* secs. 534, 535, 536." *Hill's Adm'r* v. *Hill et al.,* 79 Va. 592.

Here the equities which support the claims of Ophelia Parker in her own right and as administratrix are the same. The defendant has collected and holds the proceeds of all of these policies in one fund and as a trust for those entitled thereto. Nothing could be gained by separate suits, and no one is put to any disadvantage or to any inconvenience by reason of the blending of these two claims.

The decree appealed from, modified in the manner so stated, should be affirmed, and it is so ordered.

*Modified and affirmed.*