# Wythebille

MINNIE GREEN, AMENDED TO READ MINNIE DONALD V. SOUTHWESTERN VOLUNTARY ASSOCIATION, INC.

June 8, 1942.

Record No. 2554.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Clayton Scyphers*, for the plaintiff in error.

*Jones & Woodward*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Minnie Green, whose true name was Minnie Donald, to collect from the Southwestern Voluntary Association, Inc., the sum of $300 under a life insurance policy issued by that corporation on the life of Robert Clayton Green, deceased. The notice of motion described the plaintiff as the beneficiary named in the policy and also as a dependent of the insured.

The defendant filed a plea of the general issue, and at the conclusion of the evidence filed a demurrer to the evidence. The jury returned a verdict for the plaintiff for $300, subject to the ruling of the court on the demurrer to the evi-

dence. To a judgment on the demurrer in favor of the defendant, this writ of error was awarded.

Upon the demurrer to the evidence, the truth of all the following facts and circumstances, and all just inferences therefrom, was admitted; and all evidence of the defendant in conflict therewith was waived.

Minnie Donald and Robert Clayton Green were colored persons, both living at a rooming house in the city of Bristol, Virginia. They were engaged to be married. After their engagement, Minnie gave up her work of washing and ironing for others and went to work in a restaurant owned by her husband-to-be. Green furnished her a room and supplied her with clothes, furniture, and the necessities of life. She received no pay from him other than some money to pay her insurance premiums and small bills. There was no evidence of improper relations between the two.

On March 3, 1941, the defendant's agent and solicitor went to the rooming house where Green resided and persuaded him to make an application for a policy of insurance. The plaintiff and two other witnesses, who were present at the time, testified that when Green was asked who was to be the beneficiary, he named Minnie Donald, saying that he was engaged to her and that he expected to marry her. The agent said it would be all right to name her in the application as Minnie Green, wife of the insured, and his beneficiary, in order to avoid the trouble of changing the name of the beneficiary in the policy at a later date. The agent then accordingly filled out the application blank. Green signed it and paid the premium.

The Association approved the application on March 4, 1941, and a certificate of insurance in the sum of $300, dated March 15, 1941, was duly issued to the insured payable upon his death to Minnie Green, described as standing in the relationship of wife of the insured. Green, unmarried, died by accidental or violent means on April 12, 1941, while the policy was in force.

No objections were made to the admission of the above evidence. The defendant only sought to contradict it in

part, denying that its agent advised the insured that it was proper to describe the named beneficiary as his wife.

Neither the application nor the policy contained any specified limitations upon the power and authority of the insurance solicitor.

There was no evidence as to the particular status of the Association as a life insurance corporation, either in the application or in the certificate of insurance, except a reference in one of the numerous clauses of the certificate as to a reserve fund to be kept by the Association in accordance with "Chapter 411, Acts of Virginia Assembly, 1936" (Virginia Code, 1936, chapter 169 A, sections 4258(1) to 4258(15)) and its right to make additional calls to maintain sufficient reserves. Its charter was not put in evidence; nor its constitution and by-laws, if any it has.

The grounds of the defendant's demurrer to the evidence were that (1) since the defendant operated as a burial society, the plaintiff was prohibited from being a beneficiary by Virginia Code, 1936, section 4258 (7); and (2) the policy was obtained through the fraud and misrepresentation of the insured and the plaintiff in falsely stating the name of the plaintiff, and that she was the wife of the insured.

Neither the application nor the policy of insurance makes any reference whatever to the insurer as a corporation organized to provide for "burial benefits for the payment in whole or in part of funeral, burial and expenses of deceased persons, certificate holders or subscribers, * * *," as a burial society is defined by Virginia Code, 1936, section 4258(1).

The defendant filed no plea setting up its status as a burial society nor offered evidence thereof. Whether it operated as such society or as a voluntary association carried on for the sole benefit of its members and their permissible beneficiaries was a matter of affirmative proof, and it made no such proof. Statutes restricting those who may be beneficiaries under certain insurance contracts are for the benefit of insurers who establish their status thereunder.

The reference to a reserve fund was insufficient to put the insured on notice of its peculiar status as every solvent insurance corporation should carry a sufficient reserve.

■ Since there was nothing to show that there was any limitation as to who might be a beneficiary under the certificate of insurance, it must be treated as an ordinary life insurance contract; and if the beneficiary had an insurable interest in the life of the insured and committed no fraud upon the defendant, she is entitled to recover.

■ In this State it has long been held that in the absence of an insurable interest, a policy on the life of another is contrary to public policy and cannot be enforced by the beneficiary. The lack of insurable interest causes the transaction to be regarded as a speculative or wager contract. *Roller* v. *Moore*, 86 Va. 512, 10 S. E. 241, 6 L. R. A. 136; *Crismond* v. *Jones*, 117 Va. 34, 83 S. E. 1045, Ann. Cas. 1917C, 155; *Fulcher* v. *Parker*, 169 Va. 479, 194 S. E. 714.

In several cases we have approved this statement from 1 May on Insurance, section 102a:

■ "Wherever there is such a relationship that the insurer has a legal claim on the insured for service or support, or when, from the personal relationship between them, the former has a reasonable right to expect some pecuniary advantage from the continuance of the life of the other, or to fear loss from his death, an insurable interest exists." *Lewis* v. *Palmer*, 106 Va. 522, 56 S. E. 341; *Mutual Life Ins. Co.* v. *Board*, 115 Va. 836, 80 S. E. 565, L. R. A. 1915F, 979.

■ We have also said that the contract is not obnoxious to public policy when the relationship is such that the bonds of affection between the beneficiary and the insured would naturally incline the former to foster and prolong the life of the latter rather than to desire to shorten it. *Lewis* v. *Palmer*, *supra*.

We have not been heretofore called on to pass upon the specific question as to whether or not a fiancee has an insurable interest in the life of her intended husband. However, the question has been answered in the affirmative in many other jurisdictions. *Harden* v. *Harden*, 191 Ky. 331, 230 S. W. 307, 17 A. L. R. 576; *Clements* v. *Terrell*, 167 Ga. 237, 145 S. E. 78, 60 A. L. R. 969, and cases cited; 14 R. C. L., section 97, p. 921; 37 C. J. 395, section 61 cc. See also

annotation, "Insurance; insurable interest of fiancé and fianceé." 17 A. L. R., page 580.

The rulings seem to stand on solid ground. A contract of marriage is an enforceable contract, and its breach by her fiancé gives the woman an action entitling her to recover pecuniary compensation for the advantages she has lost from its non-performance. A woman has a reasonable right to expect a pecuniary benefit or advantage from the continuance of the life of the man to whom she is engaged to be married. The relation naturally inclines her to the hope that his life may be prolonged. She has a right to look forward to the realization of her perfectly natural desires and hopes.

According to the spirit and purpose of the rule requiring an insurable interest, a woman has and ought to have such an interest in the life of her fiancé. Certainly a fianceé has as great an interest in her intended husband as his cousin related to the fourth degree, a relationship authorized in the statute relied on by the defendant.

Upon the demurrer to the evidence, it must be conceded that the description of the plaintiff as wife of the insured was not made because of any wilful purpose to deceive or defraud the insurer. The true relationship was clearly and honestly stated to the agent. The insured relied upon the superior knowledge and experience of the agent. The erroneous designation was descriptive only. It was a manifest intention of the insured to name his fianceé, the plaintiff, as his beneficiary. The misdescription should not deprive her of her insurable interest in her capacity as fianceé. Couch on Insurance, Vol. 2, page 265. *Doney* v. *Equitable Life Assur. Soc.*, 97 N. J. L. 393, 117 A. 618; *Sims* v. *Missouri State Life Ins. Co.*, 223 Mo. App. 1150, 23 S. W. (2d) 1075; *Clements* v. *Terrell, supra.*

The misrepresentation of the relationship of the beneficiary to the assured did not increase the chances of loss insured against. The risk accepted by the insurer was not affected by the relationship of the beneficiary. The risk was the same whether she had been named as fianceé, cousin, or de-

pendent. The misrepresentation had no relation to the death of the insured.

Virginia Code, 1936, section 4220, provides:

"All statements, declarations and descriptions in any application for a policy of insurance shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy, shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

We have construed this section to provide that no such statement, declaration, or description shall be allowed to bar a recovery upon the policy, or be construed as a warranty, unless it be "clearly proved" that it was both false and material to the risk. *Flannagan* v. *Northwestern Mut. Life Ins. Co.,* 152 Va. 38, 146 S. E. 353; *Modern Woodmen, etc.* v. *Lawson,* 110 Va. 81, 65 S. E. 509, 135 Am. St. Rep. 927.

In *Mutual Ben. Health, etc., Ass'n* v. *Ratcliffe,* 163 Va. 325, 175 S. E. 870, Mr. Justice Holt said:

"A soliciting agent with power to take applications is the agent of his company. Where an applicant has no knowledge of limitations upon his power, he may assume that they are co-extensive with the business entrusted to his care. He has all ostensible power. *Royal Ins. Company* v. *Poole,* 148 Va. 363, 138 S. E. 487; *Royal Indemnity Company* v. *Hooke,* 155 Va. 956, 157 S. E. 414; 2 Joyce on Insurance, section 472. But the insured must not have been responsible for any mistakes or omissions. *Harrison* v. *Provident Relief Association,* 141 Va. 659, 126 S. E. 696; 40 A. L. R. 616." * * *

" 'Where the insured at the time of making the application, gives full, true and correct answers, relying upon the skill, honesty, and good faith of the company's agent to fill out the application correctly, and such agent makes out the application incorrectly or inserts answers different from those given or false answers, the company cannot take

advantage thereof, and where the applicant is ignorant of the discrepancy or wrongful act of the agent he is entitled to recover on the policy, and this rule applies even though the agent in such case has transcended his actual authority.' 2 Joyce on Insurance, section 475."

In *Harrison* v. *Provident Relief Association, supra,* Mr. Justice Holt quoted with approval the following from *Pfiester* v. *Missouri State Life Ins. Co.,* 85 Kan. 97, 116 P. 245:

" 'It is well settled that where the agent of an insurance company who fills out an application for insurance is duly informed as to the facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company.'

" 'It has been held in this State that notice to the agent is binding upon the company, though not communicated to it.' *Home Insurance Company* v. *Strange,* 70 Ind. App. 49, 123 N. E. 127.'

" 'The authority of a soliciting agent of an insurance company to take applications for insurance carries with it the legal implication of an authority to fill up the application, and to do all things needful in perfecting it.' Joyce on Insurance (2nd ed.), section 425."

See also *Modern Woodmen, etc.* v. *Lawson, supra.*

The cases of *Continental Cas. Co.* v. *Lindsay,* 111 Va. 389, 69 S. E. 344 and *Provident Relief Ass'n* v. *Butts,* 158 Va. 259, 163 S. E. 66, relied upon by the defendant, are readily distinguishable from the present case.

In the *Lindsay case,* a recovery was denied because the application falsely named the beneficiary as the wife of the insured when it turned out that she was a woman living with him in illicit cohabitation. The manner of living of the insured was held to have increased the risk.

In the *Butts case,* the written application made out by Butts recited that the insured was his cousin. She was, in fact, not related to him, but he had lived for years with her in a state of illicit cohabitation. Following the rule in the *Lindsay* case, the false statements of the beneficiary were held material to the risk.

It is unnecessary to consider the right of the plaintiff to recover as a dependent. Evidence of dependency is meager and most unsatisfactory.

We are of opinion that the company, through its agent, waived its right to complain of the failure of the insured to set out an accurate description of the beneficiary in his application, and that it ought not to be allowed to avoid its policy contract. The evidence was sufficient to have warranted the jury in finding against the defendant.

The trial court erred in sustaining defendant's demurrer to the evidence. Its judgment will be reversed and judgment entered here upon the verdict of the jury.

*Reversed and final judgment.*