## O'Bryan, et al. v. England, et al.

(Decided December 15, 1916.)

## Appeal from Daviess Circuit Court.

1. Wills—Construction.—A devise to one for life which also gives to the devisee the unconditional and unrestricted control over the property during the life of the devisee, is a devise in fee; but an express devise of a life estate coupled with an unlimited power of disposition of the remainder by will, only passes to the first taker a life estate, and if he fails to exercise the power of disposition, the remainder at his death is undevised property and passes to the heir at law of the testator.

2. Insurance—Death of Beneficiary Before Insured.—Under the provisions of section 655, Kentucky Statutes, although the beneficiary in a policy of insurance may die before the insured, upon his death the policy is payable to the legal representatives of the beneficiary as against the estate of the insured.

3. Insurance—Beneficiaries—Change of.—In the absence of any authority given in the policy or the charter of the company issuing it, the insured has no authority either before or after the death of the beneficiary to change the beneficiary named therein.

4. Insurance—Assignment of Policy.—A provision in such a policy that any assignment of the policy shall be attached thereto and a duplicate furnished the company, does not contemplate that the insured may assign the policy without the consent of the beneficiary.

5. Wills—Construction—Assignment of Insurance Policy.—Where a testatrix devises her whole estate in trust for the use and benefit of her husband during his life and gave to her trustee and executor complete power to sell and dispose of any of her property, and full and complete power at any time to pay over to her husband for his own use and benefit any part of the principal of her estate whenever, in the judgment of the executor, it might be necessary to use the same for the support and maintenance of her husband, and that his receipt to her executor should be an acquittance and discharge to said executor from any liability on account of such payment, it was within the power of the executor, after the death of the testatrix, and before the death of the husband, to assign to the husband a life insurance policy payable to the testatrix upon the written request of the husband, and such assignment passed the title to the husband.

R. W. SLACK, CLEMENTS & CLEMENTS and W. T. ELLIS for appellants.

E. B. ANDERSON and JOHN H. CHANDLER for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing in part and affirming in part.

Richard Monarch and Mary B. Monarch were married many years ago, and thereafter lived at or near Owensboro in Daviess county. Up to about twenty years ago Richard Monarch had a large estate, but becoming involved in financial difficulties, he made an assignment for the benefit of his creditors. Mary B. Monarch never had any property except that she acquired through her marital rights out of the assigned estate of R. Monarch. The money so acquired by her she invested in a farm near Owensboro, of 154 acres, the fee simple title to which was taken to her. The couple were childless, and on the 27th day of February, 1915, Mary B. Monarch died testate, and on the 9th of July thereafter Richard Monarch died intestate.

Richard Monarch had several insurance policies on his life during his more prosperous period and managed to keep them alive until 1913, at which time he had them all merged into one, and had that issued as a paid up policy for $8,275.00, in which policy Mary B. Monarch was named as the sole beneficiary. There was no provision in the policy authorizing a change in the beneficiary by the insured, nor was there, so far as the record shows, any charter provision authorizing the same. The only provision in the policy having reference to any assignment thereof is section 2, which reads as follows:

"Section 2. Any assignment of this policy shall be attached hereto, and a duplicate thereof furnished said company; and any claim against said company arising under this policy made by any assignee, shall be subject to proof of interest; but in no case does said company guarantee the validity of an assignment."

The will of Mary B. Monarch is as follows:

"Know all men by these presents that I, Mary B. Monarch, do hereby make and ordain this to be my last will and testament and I direct that any and all estate of which I die seized or possessed shall be held and disposed of by my executor as hereinafter directed, as follows, to-wit:

"First. I direct that my just debts and funeral expenses be first paid.

"Second. All the rest and residue of my estate of whatsoever kind, real, personal or mixed, and wheresoever situated and especially my farm situate near the town of Owensboro, in the State of Kentucky, consisting of one hundred and fifty-four (154) acres lying on the

Ohio River and being the same property purchased by me during the fall of 1905 from Mrs. E. J. Buckman, I hereby devise and bequeath to my executor hereinafter named, to be held by said executor in trust upon the following terms and conditions, to-wit:

"All the rents, profits, issues and incomes arising therefrom shall go to my husband, R. Monarch, during his life, and he shall be allowed the privilege without charge or rent of living upon said farm if he elects so to do, and his interest in said estate shall continue during his entire life, unless or except his creditors, should undertake to subject the same to the payment of any debts he now has or may hereafter contract, and if any such creditors should undertake to subject said rents, profits or issues to payment of his debts his interest shall then at once cease, and from thence forward said rents, profits and issues shall be paid to and become the property of ............................................................................. I hereby fully vest said trustee with complete power to sell and dispose of said property, to convert the realty into personalty and the personalty into real estate at his pleasure and to invest same and to change investments as in his judgment may seem to the best interest of my estate. He shall have power to make deeds to any real estate that I may own at the time of my death and his deed shall fully vest the purchaser from him with full fee simple title to said property and any purchaser from him shall not be required to see to the application of the purchase money.

"My said executor shall have full and complete power at any time to pay over to my husband for his own use and benefit any part of the principal of said estate if in his judgment it is necessary so to use the principal for the support and maintenance of my said husband, and his receipt to my said executor shall be an acquittance and discharge to said executor from any liability on account of such payment.

"At the death of my husband my executor shall turn over all of my said estate that remains in his hands undisposed of to such person or persons as my husband may appoint by his will, and I hereby vest in my said husband full power to make a will to said property and to dispose of the same as he may elect, and the conditions and provisions of his will shall be carried out by my executor. If my said husband should die without having made a will, then in that event my said executor

shall turn over whatever remains of my estate after my husband's death, and I devise and bequeath the same to

...........................................

"If my executor herein named should die before I do, or if he should refuse or for any reason fail to qualify as such or having qualified should resign, I hereby empower my husband, R. Monarch, to appoint an executor and trustee to act under this will, and his appointee shall have all the powers and authority herein vested in the executor herein named by me.

"I hereby appoint ................................................................ my executor and trustee under this will, and request that he shall be allowed to qualify without bond or surety, and that no inventory of my estate shall be required."

There being no executor or trustee named in the will, the Central Trust Company, of Owensboro, qualified both as trustee and as administrator with the will annexed, and after the death of Richard Monarch, it also qualified as his administrator.

After the death of Mary B. Monarch and during the life of Richard Monarch, the Trust Company as administrator with the will annexed of Mary B. Monarch, upon the written request of Richard Monarch, assigned the paid up life policy to Richard Monarch.

Appellants are the heirs at law of Richard Monarch, and appellees are the heirs at law of Mary B. Monarch. The appellants are claiming: (1) That Richard Monarch took the fee in all the property of Mary B. Monarch under her will, and that as he died intestate and did not exercise the power of disposition given to him in the will of Mary B. Monarch, that they, as his heirs at law, inherited the same from him; and (2) that inasmuch as Mary B. Monarch, the sole beneficiary in the life policy on the life of Richard Monarch, died before he did, that she never had any vested interest in the proceeds of that policy, and it belonged therefore to the estate of Richard Monarch from whom they had inherited it; and, (3) that in any event, even though Mary B. Monarch had a vested title to the life policy which passed under her will, under the broad and comprehensive provisions thereof, given to her executor, it was within the power of the administrator with the will annexed, to assign the same to Richard Monarch during his life, and that the written request of Richard Monarch under the terms of her will is a complete acquittance to the administrator.

On the other hand it is claimed by the appellees that Richard Monarch, under the express provisions of Mary B. Monarch's will, only took a life estate in her property, and that as he failed to exercise the power of disposition given him therein, Mary B. Monarch died intestate as to the remainder interest in all of her property, and it therefore, at the death of Richard Monarch, passed to her heirs at law; and second, that as there was no authority given in the policy to the insured to change the beneficiary, immediately upon its. issual Mary B. Monarch was vested with the beneficial title thereto and the same belonged to her estate; and third, that the action of the Trust Company, as administrator, in assigning the policy to Richard Monarch was unauthorized and void.

The lower court adjudegd both the farm and the proceeds of the insurance policy to the heirs at law of Mary B. Monarch, and from that judgment the heirs of Richard Monarch have appealed.

The argument for appellants is that the husband took a fee simple estate under the will because of the express devise to him of the life estate, and of the devise to the trustee giving unlimited power of disposition and authorizing it to turn over to her husband any part of the principal of the estate, if at any time, in its judgment, it should be necessary to use the same for his support and maintenance; and because of the fact that she failed to name a remainderman, and the fact that she gave to her husband the right to name the executor and trustee, and the right to dispose of by will any part of the property which might be undisposed of at his death; that the presumption is that where a will is made it is presumed to be the intention of the testator to dispose of his entire estate, and not to die intestate.as to a part of it, and they rely upon that class of cases as authority wherein it has been held that a devise to one for life coupled with authority to such devisee to manage and control the property as he may see fit during his. life, amounts to and is equivalent to a devise in fee. This class of cases is represented by Alsip v. Morgan, 33 K. L. R. 72, and Constantine v. Moore, 23 K. L. R. 369.

In Alsip v. Morgan the devise was to the wife of "all my land and farming implements belonging thereto, in short all my estate both real and personal, her lifetime to manage and dispose of as she may see cause."

In the Constantine case the devise was to the wife of "all my property I may die possessed of, of every description, real, personal and mixed, to have the same for her benefit, to control the same during her life as she may see proper, free from the claim of every person or persons, and to dispose of the same as she may see proper at her death."

In that class of cases the devises are held to be in fee because they unmistakably show such purpose upon the part of the testator; the reference therein to the lifetime of the devisee is only incidental, and the estate passing must be judged from the whole instrument, which shows, notwithstanding the reference to the life estate, a purpose to give unconditional and unrestricted control over the property *during the life of the devisee.*

But this case is essentially different from that class in that the testatrix expressly reserved the remainder estate and authorized her husband, the life tenant, to dispose of it not *during his lifetime,* but *at his death by will,* if any was then left undisposed of. If there had been in this will unlimited authority to the husband to use the property during his life as he might see proper, that coupled with the express life estate, would undoubtedly have passed the fee; but instead of authorizing the exercise of such authority during his lifetime, she expressly gives to a trustee the complete control and management of the property during his life with provision for his care and maintenance.

The difference between a general devise to one for life, coupled with the right to use and dispose of the property *during life* as he may see proper, which is generally held to pass the fee, and the giving of a life estate, coupled with an unlimited power of disposition of the remainder *by will,* is clear and has often been pointed out. In the one case the fee passes because the testator has left nothing to pass by operation of·law; he has devised not only a life estate, but has given the devisee unlimited power of disposition during his life; while in the other class of cases, to which this case belongs, the testator has only devised a life estate and has not coupled with that devise an unlimited power of disposition *during the life of the holder,* but has only given him the right *at his death* to dispose of the remainder. In the one case the disposition of the remainder is by the testator, because he gives unlimited power of disposition during the life of the first taker; in the other

she has not parted with the remainder, but has only given the privilege to another to dispose of it at his death.

In Kent's Commentaries, Vol. 4, pp. 318, 319, the rule is thus stated:

"A devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. But when the estate is given for life only, the devisee takes only an estate for life, though a power of disposition, or to appoint the fee by deed or will be annexed; unless there should be some manifest general intent of the testator which would be defeated by adhering to this particular intent."

And again at pages 535 and 536, he says:

"So if an estate be given to a person generally or indefinitely with a power of disposition, it carries a fee; unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case the express limitation for life will control the operation of the power, and prevent it from enlarging the estate to a fee."

In 2 Minor's Institutes (Ed. 1892) page 821, the doctrine is thus stated:

"It is also to be observed that where no disposition is made of the subject, in case no appointment shall be made, as where land is devised to L. for life, and then to such uses as she shall appoint, and she makes no appointment, the land reverts to the heirs of the testator as a subject in respect to which he is intestate."

The same distinction has frequently been recognized in the opinions of this court. See McCullough v. Anderson, 90 Ky. 126; Herbert v. Herbert, 85 Ky. 134; McCallister v. Bethel, 97 Ky. 1; Pate v. Barrett, 2 Dana 304; Caleb v. Field, 9 Dana 233.

We entertain no doubt that the ruling in the lower court that R. Monarch only took a life estate under the will of Mary B. Monarch was correct.

In Kentucky Statutes, section 655, it is provided:

"When a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same."

Under this statute it has many times been held that although the beneficiary in the policy of insurance may die before the insured does, that upon his death the policy is payable to the legal representatives of the beneficiary as against the estate or creditors of the insured. Hall v. Ayer, 32 K. L. R. 288; Neal v. Sherley, 137 Ky. 818; Vaughan v. Brotherhood, 149 Ky. 587, and Buckler v. Supreme Council, 143 Ky. 618. So that it would seem to be perfectly plain that in the absence of any authority given by the policy, or a charter provision in the company issuing it, Richard Monarch had no authority before or after the death of Mary B. Monarch to change the beneficiary named in the policy, and that the policy passed under her will.

The contention of appellants that the provisions of section 2 of the policy quoted above, authorized an assignment thereof is manifestly unsound. There is no reference whatsoever to a change of the beneficiary and the assignment so contemplated in the policy manifestly has reference to an assignment made by the beneficiary, the only person under its terms who had such power.

We then have left the single question whether the trustee exceeded its authority under the terms of Mary B. Monarch's will when it assigned the policy to Richard Monarch after her death. The whole will convincingly shows that the welfare and happiness of her husband during his life was uppermost in the mind of the testatrix; it might be assumed by reading between the lines that but for the situation with reference to his indebtedness, she would have certainly devised to him her estate in fee, but having that in mind and desiring to protect him in the use and enjoyment of the property during his whole life, she not only gave him the whole income therefrom and the right to the exclusive use of it during his life, but she gave to her executor complete power to sell and dispose of her property and to change the investment thereof whenever in his judgment it might seem best; she not only gave the trustee the power to make deeds, but she gave him "full and complete power at any time to pay over to my husband for his own use and benefit any part of the principal of said estate if, in his judgment, it is necessary so to use the principal for the support and maintenance of my said husband, and his receipt to my said executor shall be an acquittance and discharge to said executor from any liability on account of such payment."

We have in this last quoted provision unlimited power and authority upon the part of the executor to pay over to her husband, the one whose welfare and happiness was her chief concern, any part of the principal of her estate whenever, in the judgment of the executor, he might deem it necessary for his support and maintenance, and it will be observed that there is no restraint or restriction placed upon the executor in the exercise of that judgment; and in order to further emphasize that idea after expressly conferring that power, she unequivocally provides that her husband's receipt to her executor shall be a full acquittance and discharge for any such payment. It would be difficult to frame in any language a more absolute and unrestrained power and authority in an executor.

We have already seen that the life insurance policy was a part of the estate of Mrs. Monarch, and the assignment by the administrator of that policy to R. Monarch was no more nor less than a payment to him by the executor, in the exercise of its judgment, out of the principal of her estate. The transaction must be given the same effect as if that much money had been on hand and the executor, in the exercise of his judgment and discretion under her will, had paid it over to R. Monarch because it was deemed by the executor to be necessary for his support and maintenance. And the fact that he died shortly after this assignment, and it had never become necessary for him to use this life insurance policy, or the fund that might have arisen from it, in his support and maintenance, can in no way be held to affect the unlimited discretion and exercise of judgment given to the trustee in the will.

We think the executor and trustee did not exceed its authority, but was acting within and under the broad and comprehensive provisions of the will when it assigned this policy to Richard Monarch; and to the extent the judgment of the circuit court held the proceeds of this policy to be a part of her estate it was erroneous.

For the reasons given the judgment of the circuit court is reversed in so far as it adjudged the proceeds of this policy to the heirs at law of Mrs. Monarch; in all other respects the judgment is affirmed.