## Hoskins v. Hoskins.

(Decided June 7, 1929.)

(As Modified, on Denial of Rehearing, November 8, 1929.)

6

FAULKNER & FAULKNER for appellant.

W. A. STANFILL for appellee.

Opinion of the Court by Drury, Commissioner—
Affirming.

William Hoskins died on March 26, 1927. His life was insured in the Pacific Mutual Life Insurance Company, which is what is termed an ordinary, legal reserve or old line company. The amount of this insurance is $3,529.38, which the company paid into court, and this is a contest between his mother and his widow, relative thereto. The widow was successful, and the mother has appealed.

This insurance contract was made on July 7, 1921, and the mother was named as the beneficiary. This policy contained a provision for changing beneficiaries which we shall copy later. Some time after taking this policy, William Hoskins married Edith Cornett Hoskins, whom we shall refer to as the widow. On March 18, 1927, William Hoskins accidently received serious burns from contact with an electric wire.

We think it well at this point to state just what happened in the trial court, just what was done which we are asked to undo.

This policy, with its accumulations, amounted to $4,-029.38. The company denied liability for any sum in excess of $3,529.38, and refused to pay any one.

Edith Cornett Hoskins sued for the whole amount, and made the company and Sallie Ann Hoskins defendants. Sallie Ann Hoskins answered, and claimed the whole of the policy. The company for its answer admitted liability for $3,529.38 and contested the remaining $500. By agreement it was allowed to pay this $3,529.38 to a trustee, upon whom the parties agreed. The issues were made, and this evidence heard before a jury.

L. A. Judy testified: "I live in Hazard, Ky., am the agent of the Pacific Mutual Life Insurance Company, and have known William Hoskins since 1921, and on July 7th of that year I wrote for him the policy No. 431509 sued on, and the premiums have all been paid. In this policy Sallie Ann Hoskins is made the beneficiary. After he married he spoke to me about making his wife the beneficiary, and I told him to bring in the policy and I would attend to it, but he never did so. At another time he said he did not want to change it, as he had taken more insurance. On some six or eight other occasions we talked about the changing of this policy, but I could do nothing without the policy and he never brought me the policy. (Witness does not fix, and was not asked, the dates of these conversations). On March 18, 1927, after I heard of his injury, acting on my own accord, I took a printed blank, provided by the company for changing beneficiary, to the hospital, gave it to W. P. Mahew, to ask Hoskins to sign it, and we would send it to the company with the policy for the change. The paper marked 'Exhibit A' is this paper. This was the only policy Hoskins had in my company. Mahew returned this paper to me the next day. I had him sign it as a witness, and I kept it until after the death of Hoskins, which occurred on March 26, then sent it to the company along with the proofs of death on May 4, 1927."

W. P. Mahew testified: "I have known William Hoskins for several years; was well acquainted with him, and accompanied him to the hospital in Hazard after he was injured, and remained with him. Mr. Judy brought there and gave to me a blank request for change of beneficiary. I read it over, then took it into the room where Hoskins was, and explained it to Hoskins, and in his presence I filled in the words 'Edith Cornett Hoskins wife,' filled in the date, 'Hazard, Ky., March 18th, 1927,'

and told him to sign it if he wanted to make his wife his beneficiary. Those in the room were Edith Cornett Hoskins, W. H. Jefferson, and Dr. ———. Hoskins had not had an anaesthetic; he was burned bad, but did not seem to be suffering bad. Hoskins examined the paper carefully, understood what it was, signed it in my presence, and gave it back to me. I returned the paper to Mr. Judy and then signed as a witness to the signature of Hoskins. 'Exhibit A' is this paper.''

This was all the evidence on the question of change of beneficiary. The court instructed the jury to find for the insurance company upon the $500 it was contesting, and that was done.

The court then instructed the jury to find for the plaintiff, Edith Cornett Hoskins, if it should find and believe from the evidence that before his death, William Hoskins signed and delivered to W. P. Mahew the paper changing the beneficiary in the policy, and, unless it did so believe, to find for Sallie Ann Hoskins, and that nine or more agreeing could find a verdict.

The unanimous verdict was: ''We the jury agree and find for the plaintiff, Edith Cornett Hoskins. Matt Horn, Foreman.'' Judgment for plaintiff followed, and this is what we are asked to undo.

Sallie Ann Hoskins did not object to the form of these instructions, but she insists she should have had a peremptory instruction to find for her, and the remainder of this opinion is our answer to this contention.

It is argued that the name of the new beneficiary, Edith Cornett Hoskins, was not in this request for change of beneficiary when William Hoskins signed it, but in the face of this evidence and the verdict of this jury foundation for that argument is rather hard to find.

There is no suggestion in either pleading or proof of fraud, want of capacity, or undue influence.

Counsel for the mother say a great deal about lack of evidence that Hoskins directed this paper to be sent to the company, but he knew he and Judy had discussed the matter of making this change; he knew the paper had been sent to him through Mahew by some one; his natural presumption was it was sent by Judy, and that Mahew would return it to Judy, and Judy would send it to the company.

The proof shows Hoskins was superintendent of the Solar Coal Company, which would indicate he was a

man above the average in intelligence. We cannot presume he proposed to do an idle thing when he signed this paper. Mahew told him to sign it, if he wanted to make his wife his beneficiary. He signed it, thus showing that was his purpose; then gave it back to Mahew, thus making Mahew his agent to carry out that purpose by delivering the paper to the proper parties. On May 4, 1927, Judy sent this application for change of beneficiary to the district office of his company at Ashland, Ky., and that office forwarded it to the home office of the company at Los Angeles, Cal., where it was received on May 11. The policy was not sent to the district office or to the home office. Some one in the Ashland office of this insurance company has at some time since the death of Hoskins inserted in this application for change of beneficiary the number of the policy, which was 431509, and has inserted the figures "7/7/21" to show the date of it. The only purpose in inserting this number and date is to identify the contract in which Hoskins desired to change the beneficiary, and as it is shown that this was the only contract he had with this company, it would have made no difference if this date and number had never been filled, and the question before us is: Was what was done sufficient to effectuate the change of beneficiary? The efforts of parties holding contracts of insurance on their lives to change the beneficiaries named has been a very fruitful source of litigation, as will appear to the reader from some of the cases cited in this opinion and as appears to us from the numerous cases cited in brief and other cases which we have examined in our study of this question.

Aside from sending the policy to the company, Hoskins did everything that was required of him to effectuate this change. He signed the printed request which the company had provided, after Mayhew had filled in the name of Edith Cornett Hoskins, the new beneficiary, and the request has been sent to the company. This policy was then in the possession of his mother, who resided at Annalee in Clay county. At the time Hoskins signed this request for a change of beneficiary, he was in the hospital at Hazard. The record shows that it is over 40 miles from Hazard to Annalee. This is a mountainous road and the trip can only be made on horseback. This is some explanation of why the policy was not sent with the request for change of beneficiary. Before the request for change of beneficiary reached the Pacific

Mutual Life Insurance Company, Hoskins had died, and the company had received notice of his death; hence when this request for change of beneficiary reached the insurance company, it did nothing. Counsel for the mother have been unusually diligent in the preparation of their brief in her behalf. They have cited a vast number of cases, principally cases, however, from other jurisdictions, and place their chief reliance upon the case of Freund v. Freund, 218 Ill. 189, 75 N. E. 925, 109 Am. St. Rep. 283. It is generally held that where a right to change the beneficiary has been reserved to the insured in the policy or is authorized by statute, which is a part of the contract, the beneficiary named in the policy has a mere expectancy and no vested right or interest during the lifetime of the insured. This is the established rule in this state. See Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031, and cases there cited. It is also the general rule. See 37 C. J. 579, sec. 345. Where policies authorize the change of beneficiary, they usually specify the mode of effecting the change, as by filing a written notice or request accompanied by the policy at the home office of the company, and an indorsement of the change on the policy by the company. See 37 C. J. 584, sec. 350. The courts of last resort of the various states of this Union are not in harmony about the things necessary to be done to effectuate a change of beneficiary. In some jurisdictions it is held that a strict compliance is nesessary, while in others the rule is that a substantial compliance is sufficient. In this commonwealth the rule seems to be: Where the assured has done substantially all the contract required of him to effect a change of beneficiary, and all that remains to be done are the ministerial acts of the officers of the insurer, the change will take effect, though the formal details were not completed before the death of the insured. Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Daugherty v. Daugherty, 152 Ky. 732, 154 S. W. 9; Vaughan's Adm'r v. Modern Brotherhood of America, 149 Ky. 587, 149 S. W. 937; Howe v. Fidelity Trust Co., 89 S. W. 521, 28 Ky. Law Rep. 485; Manning v. Ancient Order of United Workmen, 86 Ky. 136, 5 S. W. 385, 9 Ky. Law Rep. 428, 9 Am. St. Rep. 270. The case of Freund v. Freund, supra, is a case that is frequently cited, and in 37 C. J. 586, it is noted as a leading case, and it may be a leading case in states adhering to the strict compliance rule, but that rule is not followed in this state, and, moreover, this Freund case is rested

on a statute of the state of New York, which is: "Membership in any such corporation, association or society shall give to any member thereof the right, at any time, with the consent of such corporation, association or society, to make a change in his payee or payees, or beneficiary or beneficiaries, without requiring the consent of such payee or beneficiaries." We must not lose sight of the fact that this statute requires the consent of the insurer in order to effectuate the change. In a legal reserve insurance contract, the beneficiary has a vested interest from the time the contract of insurance takes effect, and, in the absence of any stipulation in the policy reserving the right to change the beneficiary, a change could not be made without the beneficiary's consent. See 37 C. J. 577, sec. 343. Hence where a statute requires the consent of the insurer it would be necessary that that consent be obtained. So the Freund case is not applicable to the question we have before us, which arises under a contract only with no statutory regulations involved; therefore we shall take no further notice of the Freund case.

We have in this state a case that can be more correctly termed a leading case than the Freund case, for it has been cited more frequently and has been cited with approval and without criticism, whereas the Freund case has frequently been criticised. We refer to the case of Manning v. Ancient Order of United Workmen, 86 Ky. 136, 5 S. W. 385, 9 Ky. Law Rep. 428, 9 Am. St. Rep. 270. We have ourselves cited this Manning case on 6 previous occasions, always with approval, and it has been cited on 28 occasions by courts of other states and it is of controlling applicability to the question before us now. Robert K. Manning had, on January 13, 1879, insured his life in the A. O. U. W. and had named as his beneficiary his brother Dellie J. Manning. Shortly after that, he married Miss Josie A. Brown, and on June 5, 1879, he attempted to change his beneficiary and to make his insurance payable to his then wife, Josie A. Manning. He was killed on July 25, 1879, and after his death his brother sued the A. O. U. W. to recover on this insurance. He was unsuccessful in the trial court and appealed to the superior court of this state. That court reversed the judgment of the trial court. See Manning v. Supreme Lodge, A. O. U. W., 7 Ky. Law Rep. 752. The case then came to this court, and this court affirmed the judgment of the trial court and adjudged the widow, not

the brother, entitled to the insurance. See Manning v. Ancient Order of United Workmen, 86 Ky. 136, 5 S. W. 385, 9 Ky. Law Rep. 428, 9 Am. St. Rep. 270. Because of the striking similarity of the contract requirements, the acts of the insured, etc., we have decided to make comparison of those things, with similar things in the case before us. In the Manning case the contract requirement was: ''Any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of his certificate in the form prescribed (see form No. 6), attested by the Recorder, with the seal of the lodge attached, and by the payment to the supreme or grand lodge of the sum of fifty cents; but no change of direction shall be valid or have any binding force or effect until said change shall have been reported to the Supreme or Grand Recorder, the old certificate, if practicable, filed with him, and a new beneficiary certificate issued thereon.''

In the case before us the contract requirement is: ''The insured . . . may, while this policy is in force, designate a new beneficiary, reserving the right of revocation, *by filing written notice thereof* at the home office of the company, accompanied by this policy for endorsement. Such change shall take effect on the endorsement of the same on this policy by the company and not 'before.'' (We have ourselves italicized a portion of the above excerpt, because it is contended in this case there is no requirement in this policy that request for change of beneficiary must be in writing).

In the Manning case, he did not indorse his request upon the back of his certificate as the by-laws provided, but wrote this letter:

''June 5, 1879.

''Please find enclosed my dues of lodge No. 2 A. O. U. W., Three Dollars and in return please send my policy made out to Mrs. Josie A. Manning and oblige

''Very respectfully, etc.,

''R. K. Manning.''

In the case before us, Hoskins signed a paper of which we shall copy all that we regard as essential to a decision of this question: ''I, the undersigned, hereby certify and declare that I am the identical person whose

life is insured and by policy No. 431509 in the Pacific Mutual Life Insurance Company of California, dated 7/7/21 and that said policy is not now assigned. I here-with hand you the said policy and request that you change the beneficiary thereunder to Edith Cornett Hoskins, wife of the insured, etc.

"In witness whereof, I have hereunto subscribed my name at Hazard, Ky., this 18th day of March, 1927. Wil liam Hoskins. Witness: W. M. Mayhew."

Manning sent his letter to the financier of the lodge for transmission to the chief office of the A. O. U. W. Hoskins gave his request to Mayhew, and the latter took it to Mr. Judy, the agent of the insurance company in this case, for transmission to the company. Manning failed to inclose a fee of 50 cents, which he was required to pay to get the change made. There was no such requirement made of Hoskins. Manning did not send in his benefit certificate, neither did Hoskins send his policy. The financier of the local lodge did not send in Manning's application until after his death, neither did Judy send in Hoskins' request for a change until after Hoskins had died. The only difference is that the A. O. U. W. did issue a new certificate to Manning, whereas the company in this case did nothing. In view of the striking similarity of the things required, the things done, and the things omitted, in these two cases, we are compelled to hold the Manning case is controlling. We are bound by it under the doctrine of stare decisis. In the Manning case, the insuring company was a fraternal society, whereas in this case the insuring company is a legal reserve life insurance company. "Neither does the character of the company, whether it be a fraternal organization collecting dues or assessments, or an old line company collecting a fixed premium, affect appellant's rights." See Daugherty v. Daugherty, supra; Hahn v. Sup. Lodge of Pathfinder, 136 Ky. 823, 125 S. W. 259. This policy belonged to Hoskins. He might have, if he had seen fit, surrendered it to the company for the cash value due him. If he had failed financially, this policy would be listed among his assets, and his trustee in bankruptcy would be entitled to surrender the policy to the company and to demand the cash surrender value of it. It belonged to him. It was his property. "A policy of life insurance is a chose in action; it may or may not have a present value; and, as such chose in action, it may be assigned or pledged as collateral, the same as other

choses in action, with this limitation: the assignee or pledgee must have an insurable interest in the life of the insured, and then he can only acquire a right to the proceeds of the policy to the extent of such insurable interest.'' Embry's Adm'r v. Harris, 107 Ky. 61, 52 S. W. 958, 21 Ky. Law Rep. 714; Lockett v. Lockett, 80 S. W. 1152, 26 Ky. Law Rep. 300. In the Lockett case the insured's father was originally named as beneficiary. Lockett afterwards married. In his last illness he gave this policy to his wife. He tried to write a letter requesting the beneficiary be changed, but was unable to do so; yet we held that the wife was entitled to the insurance.

In Vaughan's Adm'r v. Modern Brotherhood of America, 149 Ky. 587, 149 S. W. 937, Vaughan's life was insured and the policy payable to Molly C. Vaughan, his wife. She died without leaving any children, and after her death and about two weeks before his own death, Vaughan executed a paper requesting the insurer to make this insurance payable to his estate. Before the change was made Vaughan died. The contest there was between the personal representative of his wife, to whom the insurance was originally payable, and Vaughan's administrator, who claimed the insurance as a part of Vaughan's estate. The trial court adjudged this insurance to be payable to Vaughan's administrator. The personal representative of Molly C. Vaughan appealed. We affirmed the judgment.

In the case of State Mutual Life Assur. Co. v. Bessett et al., 41 R. I. 54, 102 A. 727, L. R. A. 1918C, 961, the life of William H. Crone was insured for $10,000; the policy was payable to his estate. On May 2, 1916, he signed one of the company's printed forms wherein he named his fiancee, Cora I. Bessett, as his beneficiary. This paper was completed about 9 o'clock on the morning of May 3 and delivered to the agent for transmission to the company, and on that same day and but a few minutes thereafter Crone died very suddenly. The trial court adjudged Miss Bessett entitled to this insurance and upon an appeal that judgment was affirmed.

In the case of McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A. L. R. 761, McDonald had been married twice. During the life of his first wife his policy was payable to her. After her death and after his remarriage, he had his policy changed and made payable to his second wife. He and his second wife became estranged. He notified the company that he desired to

again change his beneficiary and to have his policy made payable to his son and daughter by his first wife, but that he was unable to send the policy in for the change because it was in the possession of his second wife, who refused to surrender it. The company did nothing. McDonald died. The trial court adjudged this insurance to the second wife, his widow, and that the attempted change of beneficiary was ineffectual. On appeal the Alabama Supreme Court held that McDonald had done substantially all he was required to do under the contract; that the transfer was good; that his children by his first wife were entitled to this insurance; and accordingly it reversed the judgment. Numerous other cases could be cited, but the two cases last cited in L. R. A. and A. L. R. have numerous notes attached to them, and if parties want to investigate the question further, they can consult these notes and do so.

Counsel for the mother (the original beneficiary) have left no stone unturned, and have attacked this judgment from every angle, and one of their attacks is directed to the failure of Hoskins to send to the insurance company, along with the application for change of beneficiary, the policy or insurance contract, and the failure of the company to indorse the change thereon.

"The rule requiring the surrender of the old certificate, and indeed most of the rules of procedure, in effecting a change of beneficiaries, are intended only for the benefit of the association, and may therefore be waived by it." See Cooley's Briefs on Insurance (2d Ed.) p. 6461, and the authorities there cited.

Both the widow (the new beneficiary) and the mother (the old beneficiary) are in court, each asserting a claim to the benefits of this contract. The insurance company simply pays in its $3,529.38 saying, "Here's the money, settle it between yourselves," is allowed to go hence without day, and the court is left with these two claimants before it, one pointing to and claiming under the policy as issued; the other pointing to and claiming under both the policy and the application of Hoskins for change of beneficiary. The mother stoutly contends the insurance company cannot by any act or omission, affect her rights; therefore she says her rights to this insurance are just the same after the money is paid into court

as they would be if the insurance company were resisting with all its vigor.

This contract was made by the insurance company with Hoskins. As made, it gave his mother certain benefits, but Hoskins had the right to change the contract by giving the benefits to another. He may have thought that his wife, charged with the natural duty of rearing and educating the two children she had borne him, had greater need of it than the mother; but, whether he thought of that or not, he had the right to change the contract in that respect, and he did. True, he did not have everything done that the contract provided should be done to effectuate this change, but the things not done were things the doing of which were for the protection of the insurance company, and it is not complaining, and the mother cannot complain, as these provisions were inserted in the contract, not for her protection, but for the protection of the company.

Under the contract here sued on there is no discretion in the insurance company to indorse or to refuse to indorse the desired change. The making of this indorsement was a ministerial act about the making of which the insurance company had no choice whatever, unless it could show some reasonable possibility of probable hurt to it. It surveyed the scene, it was fully apprized of the facts, and concluded there was nothing it could do but pay; it paid and was excused. That merely left the court with the money and these two women claiming it; the mother under the contract as written, and the widow under the contract as changed, and the verdict of a jury that the contract was changed.

It is contended for Sallie Ann Hoskins that this policy and all rights under it must be determined by the laws of California, where the insurer has its home office, but that position is untenable. See Supreme Lodge K. of P. v. Hunziker, 121 Ky. 33, 87 S. W. 1134; 32 C. J. p. 977, sec. 7; 14 R. C. L. p. 892, sec. 69.

The trial court properly refused to give the peremptory instruction to find for the mother, and correctly adjudged the widow to be entitled to the insurance in the case before us. This is in harmony with our opinion in Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031. The judgment is affirmed.

The whole court sitting.

Judges THOMAS and REES dissent.

### DISSENTING OPINION BY JUDGE THOMAS

In the opinion it is said: "Aside from sending the policy to the company, Hoskins (the insured) did everything that was required of him to effectuate this change. He signed the printed request which the company had provided, filled in the name of the new beneficiary, and the request has been sent to the company." If the facts made in that statement were borne out by the record, I would be the last one to dissent from the opinion of the majority of the court. From the statement of facts contained in the opinion as based upon the inserted testimony of the witness to the material facts, only one fact embodied in the statement taken from the opinion may be considered as absolutely established; and which is, that the insured did sign the blank request for a change of beneficiary in his policy that had been prepared by the company issuing it. I make that statement because, although Mayhew says that he inserted the name of the proposed new beneficiary in the written request signed by the insured, yet he does not state that such act on his part was done before the request was signed, nor does he state that it was done at the request of the insured but only on his own accord as per directions given him by Judy, and who, as we shall later see, was then denuded of all authority touching the policy except, perhaps, such as the insured might vest in him as special agent. However, I do not regard that discrepancy material, and do not base this dissent upon it but upon the matters hereinafter stated.

Within the last 30 or 40 years this court has written opinions involving many questions affecting the right of an insured to change the original beneficiary named in a life insurance policy on his own life. Perhaps an accurate list of such cases from that time to date are: Provident Savings & Life Assur. Soc. v. Dees, 120 Ky. 285, 86 S. W. 522, 27 Ky. Law Rep. 670; Daugherty v. Daugherty, 152 Ky. 732, 154 S. W. 9; O'Bryan v. England, 173 Ky. 12, 189 S. W. 1126; Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Hopkins, v. Hopkins, 92 Ky. 324, 17 S. W. 864, 13 Ky. Law Rep. 707; Landrum v. Landrum, 186 Ky. 775, 218 S. W. 274; Howe v. Fidelity Trust Co., 89 S. W. 521, 28 Ky. Law Rep. 485; Manning v. Ancient Order of United Workmen, 86 Ky. 136, 5 S. W. 385, 9 Ky. Law Rep. 428, 9 Am. St. Rep. 270; Irons v. U. S. Life Ins. Co., 128 Ky. 640, 108 S. W. 904, 33 Ky. Law Rep. 46, 129 Am. St. Rep. 318; Watson v. Watson,

18

183 Ky. 516, 209 S. W. 524, 3 A. L. R. 1575; Embry's Adm'r v. Harris, 107 Ky. 61, 52 S. W. 958, 21 Ky. Law Rep. 714; Cooper v. West, 173 Ky. 289, 190 S. W. 1085; Harden v. Harden, 191 Ky. 331, 230 S. W. 307, 17 A. L. R. 576; Thompson v. Thompson, 190 Ky. 3, 226 S. W: 350; Griffin's Adm'r v. Equitable Assur. Soc., 119 Ky. 856, 84 S. W. 1164, 27 Ky. Law Rep. 313; Mut. Life Ins. Co. v. Twyman, 122 Ky. 513, 92 S. W. 335, 97 S. W. 391, 28 Ky. Law Rep. 1153, 30 Ky. Law Rep. 90, 121 Am. St. Rep. 471; Crice v. Ill. Life Ins. Co., 122 Ky. 572, 92 S. W. 560, 29 Ky. Law Rep. 91, 121 Am. St. Rep. 489; Sturges v. Sturges, 126 Ky. 80, 102 S. W. 884, 31 Ky. Law Rep. 537, 12 L. R. A. (N. S.) 1014; Wooten v. Hardy, 221 Ky. 338, 298 S. W. 963; Met. Life Ins. Co. v. Brown, 222 Ky. 211, 300 S. W. 599; Prudential Life Ins. Co. v. Fusco's Adm'r, 145 Ky. 378, 140 S. W. 566; Western Life Indemnity Co. v. Rupp, 147 Ky. 489, 144 S. W. 743; Id., 235 U. S. 261, 35 S. Ct. 37, 59 L. Ed. 220; Sovereign Camp, W. O. W., v. Havas, 217 Ky. 846, 290 S. W. 690; Weisert v. Muehl, 81 Ky. 339; Vaughan's Adm'r v. Modern Brotherhood of America, 149 Ky. 587, 149 S. W. 937. From a reading of them, and also text authorities upon the subject, it will be seen that without an express right to make the change, either in the policy or in the by-laws or charter rights of the beneficial insurance company issuing the policy, no change of beneficiary could be made without the consent of the latter. But, under provisions contained in the policy or laws of the society issuing the policy, the right to change the beneficiary is reserved and the mode and method by which it may be done is pointed out. In construing such provisions this court in the cases cited, as well as other courts, holds that a *substantial* compliance with the provided method will be sufficient, and this court has gone much farther than any other one in prescribing what is a ''substantial compliance'' for that purpose; but in a number of the cases where the question was presented this court in applying its extreme liberal interpretation of what is a ''substantial compliance'' said that when the insured has done everything that the terms of the conferred privilege requires of him, then the change of beneficiary will be effected, and especially so as between the old and the new beneficiary.

Two of the above cases, the Manning and the Vaughan ones, are typical and fair illustrations of that line of our opinions. In each of them the insured had

taken steps to *communicate* to the insurer his specific directions for a change of beneficiary. In the Manning case he directed his written request to a subordinate lodge with directions for it to forward it to the proper officer or officers for approval. In the Vaughan case he delivered his duly executed request to the secretary of the local lodge of which he was a member and to which he paid his dues with like directions which later were obeyed. In some of the cases he neglected to pay the charge provided for by the terms of the extended privilege, but this court in taking its extreme position held, in effect, that inasmuch as he had taken steps to communicate his direction to the company that issued the policy, he had *substantially* complied with the requirements entitling him to make the change, and the same can truthfully be said with reference to every case both domestic and foreign relied on by counsel or cited in the opinion in support of the conclusions reached by the majority of the court. In every one of those cases the insured desiring a change of beneficiary in his policy delivered, or attempted to deliver, the request for such change to the company or some agent authorized to receive it for the company.

In this case the insured obtained the policy in contest in 1921 with his mother as the beneficiary named therein. He immediately delivered it to her, and it was in her possession at the time of his death and at the time of the institution of this action. When he paid a premium he sent the receipt to her, and for a number of years thereafter he remained unmarried. Shortly after his marriage he mentioned to Judy, the soliciting agent who effected the insurance, that he was thinking of changing the beneficiary from his mother to that of his wife, but it was never done, and the insured took no steps towards effecting the change; although he was directed by Judy as to how it should be done. Later he procured another policy, much larger than the one involved here, in which he made his wife the beneficiary, and, so far as this record discloses, he never thereafter mentioned the subject of changing the beneficiary in the one here involved from his mother to his wife, and for the manifest reason, no doubt, that his second policy made provision for his wife. He seems to have been a dutiful son and warmly attached to his mother, whom he fully realized was poor and needy, and I feel authorized to presume that after he procured the second policy for the benefit of his wife

his benevolent desires were satisfied, because he had then made provisions to the extent of his ability for both his dependent mother and his wife. Notwithstanding nothing had been said about the change in beneficiary after procuring the second policy for the benefit of the wife, Judy, on the day the insured was fatally injured, delivered an unfilled request for a change in the first policy to the witness Mayhew, who seems to have been nursing the deceased in the hospital to which he was carried, and who presented it to the insured while he was in bed and in his severe and fatally injured condition.

Mayhew had no connection whatever with the insurance company, and he admits in his testimony that he did not read the written paper to the insured when he presented it to him, but he does say that he "explained it to him." Just how, and the extent of the explanation, or what was embodied in it, the record is silent. Having thus procured the signature of the insured thereto, Mayhew later in the day delivered it to Judy *without the insured giving him any directions concerning it*. It is shown by both the head officers of the company, and by Judy himself, that the latter was only a soliciting agent to procure the policy, and that when it was issued and delivered his authority with reference thereto ceased. So that, at the time the alleged request (mere signing of the unfilled paper) for a change in beneficiary was made in this case, Judy represented no one interested in the transaction and sustained no other relation to it than that of a complete stranger. But, if the insured had directed either him or Mayhew *to forward* that direction to the insurance company for its approval, it might be said that the transaction would then be sufficient to come within the purview of the liberal rule that we have adopted on the subject. But he made no such request, for the reason, perhaps, that under the conditions as described by Mayhew he was utterly indifferent to the subject, growing out of his severe injuries and his weakened physical and mental condition as a result thereof.

At any rate, Judy, the individual whose authority touching the policy had long since ceased and who was not even present or conversed with the insured at the time, kept the request so signed in his possession until *after* the insured died, when he wrote and inclosed it to his superior officer at Ashland and received in reply a reprimand for retaining it, together with an expression of a doubt if enough had been done to effect the change.

But, notwithstanding that, the superior officer forwarded the direction to the headquarters of the company at Los Angeles, Cal., and it declined to pay either beneficiary, but did pay the money into court after this litigation arose between appellant and appellee. It should also be remembered that the insured at the time he signed the blank direction gave none to any one touching the procuring of the policy, nor did he attempt to deliver it actually or constructively to his wife as the new beneficiary, or to any one for her. The precise situation then, as viewed and measured by well-known legal principles, was that the insured before his death signed an incomplete request for a change of beneficiary in the policy without taking any steps to communicate it to the company, or to any one with instructions that he make such communication to the company or some authorized agent. It was therefore the same in legal effect as if he had put the paper, as executed by him, in his pocket and said nothing to any one concerning it, or the same as if he had signed such request and delivered it to a stranger having no present connection with the policy and without making any request of such stranger to deliver it to the company and neither of which I contend is sufficient compliance with our most liberal rule requiring a substantial performance of the terms of the provided method of effecting a change of beneficiary.

My interpretation of our opinions is, that in order to effect a "substantial compliance" there, at the least, must be given or attempted to be given to the insurance company *notice* of the intention of the insured to change the beneficiary, and which implies a communication of such intention to the company by the insured himself or by some one authorized to make or deliver it for him and pursuant to his request. In other words, my position is, that there is no such thing in either logic or law as an effectual uncommunicated notice or direction. In order to effect a direction to do a particular thing, two elements must concur, i. e., the formulation of an intention or desire of the director to so direct, and a communication thereof to the directee or other party to the transaction to be affected, and it was so held by us, in substance, in the case of Harden v. Harden, 191 Ky. 331, 230 S. W. 307, 17 A. L. R. 576.

In that case the benefit certificate was made payable to the wife of the insured. On the day before his death, and while the wife, his mother, father, and brother were

sitting around his bed, he said to all of them that he wanted his mother to have half of the proceeds of his policy, and to which his wife, who was the sole beneficiary, then and there agreed. The policy was not present and no effort to alter or change it or its possession in any manner was made or directed to be made. In reciting the facts and in stating what actions or steps had not been taken by the insured, and from which we determined that there was no legal change in the beneficiary, the opinion said: "As has been stated, the policy was then in Louisville, and there was no direction or suggestion that any one should see to the assignment or change in beneficiary in accordance with his expressed wish; there was no suggestion that any one should write to the company looking to such action. In fact, no affirmative action looking to the carrying out of this expressed wish was taken by him, or requested by him to be taken by another. It was equivalent only to an expression of what it was his desire to do and getting from his wife an expression of her acquiescence in carrying out that desire, but there was no step of any kind or character taken, either by delivering the actual or symbolical possession of the certificate to his mother or to any one for her, nor was there any conduct by the insured, or anybody else, looking to the carrying out of his wish."

In differentiating the fact therein from those in the case of Lockett v. Lockett, 80 S. W. 1152, 26 Ky. Law Rep. 300 (and the only one from this court, as I interpret our opinions, that in any wise approaches a support for the opinion of the court herein) we said: "The facts of this case fail to bring it within the rule laid down in the case of Lockett v. Lockett, 80 S. W. 1152 (26 Ky. Law Rep. 300). In that case a bachelor had prior to his marriage procured a policy in which his father was designated as beneficiary; thereafter he married, and after his marriage declared to his wife, in the presence of others, that the insurance was for her benefit and protection and actually deliverel the policy to her, and she had the possession of it at the time of his death. In this case the insured had possession of the policy, although it was not in his actual custody at the time of the conversation, but he neither delivered it to his mother nor offered to do so, nor directed any one else to get it and hold it for her benefit, and nothing occurred which in the remotest sense was suggestive of a delivery, either actual or symbolical, of the policy, and the evidence, in our opinion, fails to

present a state of case which worked a change in the beneficiary. Hale v. Hale, 189 Ky. 171 (224 S. W. 1078) ; 12 R. C. L. pp. 934-936.''

Briefly, my position is that, the ''substantial compliance'' rule which we have adopted in such cases does not go to the extent of dispensing with the communicating of the insured's request for a change of beneficiary to the company, or to some officer having authority to represent the company in accepting it; or designation of someone to make such communication with some sort of request to him that he do so. Therefore, regardless of what may be the true rule to be deduced from our somewhat conflicting opinions on the subject, and accepting for the purposes of this case the most liberal one that could be so deduced, yet the facts of this case would not bring it within that rule.

I therefore most respectfully dissent, and I am authorized to say that Judge REES joins me herein.