## SECURITY BANK OF PONCA CITY v. OKLAHOMA TAX COMMISSION.

No. 28967.   Oct. 3, 1939.

O. S. Ellifrit, of Ponca City, for appellant.

Dick Jones, A. L. Herr, and C. D. Stinchecum, of Oklahoma City, for appellee.

OSBORN, J. This is an appeal by the Security Bank of Ponca City, hereinafter referred to as appellant, from an order of the Oklahoma Tax Commission assessing an income tax against it on the proceeds of two life insurance policies carried by the bank upon the life of its late president, L. K. Meek, and received and collected by the bank upon his death in 1935. The bank collected on these policies, during that year, the sum of $130,575.93, upon which an income tax was assessed by the Tax Commission in the amount of $6,865.77, with interest thereon at 6 per cent. from March 15, 1936.

The sole question presented by this appeal is whether or not the funds so received constituted taxable income within the meaning of sec. 8, art. 6, ch. 66, Session Laws 1935.

One L. S. Barnes was called as a witness and testified before the commission. His testimony in narrative form is as follows:

"I have been a stockholder and director of the Security Bank since its organization. (The bank was organized in 1917 or 1918.) During all that period of time I have been familiar with the bank's business and affairs. I knew L. K. Meek intimately from the time he came to Ponca City until the date of his death, a period of some fifteen years or more. Mr. Meek was a man of unusual business ability and leadershhip. He built that bank up from a new bank, without much business, to the largest state bank in Oklahoma. Mr. Meek's leadership and ability was such as to inspire confidence and promote a successful bank. Mr. Meek came to Ponca City at the age of about 35 years and he was a very energetic type of man; his health was very good. At the semiannual meeting of the board of directors in July, 1928, the affairs of the bank were found to be in such splendid condition that the directors felt that the showing was the result of Mr. Meek's efforts and that if he should be lost to the bank through death, there would be a serious loss to the bank, and, after a discussion among the board of directors, it was unanimously decided that the bank should obtain life insurance policies on the life of Mr. Meek to indemnify it against any loss that might come by his death. I was present and heard all the discussion. It was the judgment of the board of directors that the cheapest type of insurance without any investment features should be purchased so that the bank should receive protection and indemnification at the lowest cost, so 'term policies' were selected by the board of directors. There was no consideration given to investment features. They were not seeking an investment. It was insurance to indemnify the bank against any loss should Mr. Meek die."

Section 6 of the taxing act levies an income tax upon the entire net income earned in this state by both individuals and corporations. Section 7 defines "net income" as follows:

"The term 'net income' (except in the case of insurance companies as to which see section 40) means the gross income less the deductions allowed."

Subdivision (a) of section 8 defines "gross income" as follows:

"(a) Includes gains, profits and incomes derived from salaries, wages or compensations for personal services of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, sales or dealings in property, whether real or personal, tangible or intangible, growing out of the ownership or use of, or interest in, such property; also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit; and also gains, profits and income derived from any and all sources whatsoever. * * *"

Subdivision (b) of section 8 excludes from gross income, among other things, the following item:

"(1) The proceeds of life insurance policies and contracts paid upon the death of the insured, to individual beneficiaries or to the estate of the insured, or to a trustee or trustees for use of the beneficiaries."

The issues of law and fact involved herein are practically identical with the issues involved in the case of United States v. Supplee-Biddle Hardware Company, 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970. The facts therein involved are stated in the opinion as follows:

"The Supplee-Biddle Hardware Company sued the United States in the court of claims to recover $55,153.89, with interest, as taxes illegally assessed on the proceeds of two life insurance policies paid to it as the beneficiary on the death, in 1918, of the insured, Robert Biddle 2d. Biddle was elected president of the company in February, 1917. He was then thirty-seven years of age, in good health, and had for nearly twenty years held various offices in the Biddle Hardware Company, which h a d

merged with the appellee company in January, 1914. He was a man of ability, energy, and initiative, and was so regarded in the hardware trade. The returns from the company's business under Biddle's management had been much increased. At the instance of the board of directors and the expense of the company, he took out the two policies for $50,000 each. They were term policies for five years. The company intended thus to make secure its financial position, and to indemnify itself against losses to its earning power in the event of Biddle's death."

The language of the federal act defining gross income is quite similar to the language used in our act and includes "gains, or profits, and income derived from any source whatever," and provides an exemption upon "the proceeds of life insurance policies paid upon the death of the insured to individual beneficiaries or to the estate of the insured." In defining the meaning of the exemption clause and in determining whether the proceeds of the policies constituted taxable income within the meaning of the law, the court said:

"We think the Treasury Department erred in assuming that Congress intended, by sections 233 and 213, to distinguish between individual beneficiaries and corporate beneficiaries in including the proceeds of life insurance policies as within gross income. We think the two sections have no such purpose. Section 213 primarily applies only to the taxing of individuals. The union of proceeds of life insurance payable to individual beneficiaries and to the estate of the assured was thus intended to emphasize the exclusion from taxation in the hands of individuals of all such proceeds, and to leave no doubt of it. The meaning is the same as if the clause had read: 'The proceeds of life insurance shall not be included in gross income, whether they are paid to individual beneficiaries or to the estate of the assured.' When Congress came to deal with the gross income of corporations, it made use of section 213 by reference, and grafted it on to 233. It is reasonable that the purpose of section 213 to exclude entirely the proceeds of life insurance policies from taxation in the case of individuals should be given the same effect in adapting its application to corporations, and that such proceeds should be so excluded whether, by the direction of the insured they were to go to specially named beneficiaries, or were to inure to the estate of the insured. * * *

"It is earnestly pressed upon us that proceeds of life insurance paid on the death of the insured are in fact capital, and cannot be taxed as income under the 16th Amendment. Eisner v. Macomber, 252 U. S. 189, 207, 64 L. Ed. 521. 528, 9 A. L. R. 1570, 40 Sup. Ct. Rep. 189; Merchants'

Loan & T. Co. v. Smietanka, 255 U. S. 509, 518, 65 L. Ed. 751, 755, 15 A. L. R. 1305, 41 Sup. Ct. Rep. 386. We are not required to meet this question. It is enough to sustain our construction of the act to say that proceeds of a life insurance policy paid on the death of the insured are not usually classed as income.

"Life insurance in such a case as the one before us is valid, and is not a wagering contract. There was certainly an insurable interest on the part of the company in the life of Biddle. Mutual L. Ins. Co. v. Board, A. & Co., 115 Va. 836, L. R. A. 1915F, 979, 80 S. E. 565; Keckley v. Coshocton Glass Co., 86 Ohio St. 213, 99 N. E. 299, Ann. Cas. 1913D, 607; Mechanics Nat. Bank v. Comins, 72 N. H. 12, 101 Am. St. Rep. 650, 55 Atl. 191; United Security L. Ins. & T. Co. v. Brown, 270 Pa. 264, 113 Atl. 445. Life insurance in such a case is like that of fire and marine insurance,— a contract of indemnity. Central Nat. Bank v. Hume, 128 U. S. 195, 32 L. Ed. 370, 9 Sup. Ct. Rep. 41. The benefit to be gained by death has no periodicity. It is a substitution of money value for something permanently lost, either in a house, a ship, or a life. Assuming, without deciding, that Congress could call the proceeds of such indemnity income, and validly tax it as such, we think that, in view of the popular conception of the life insurance as resulting in a single addition of a total sum to the resources of the beneficiary, and not in a periodical return, such a purpose on its part should be express, as it certainly is not here."

The appellee, Oklahoma Tax Commission, does not cite any authorities dealing with a proposition similar to that presented here. The appellee points to the facts that a major portion of the funds received on the policies were disbursed to the stockholders of the bank by way of dividends, and that the bank showed a greater margin of profit during the years immediately after the death of Mr. Meek than during those years immediately prior thereto. But, as we view it, neither the manner of disbursement of the funds nor the increased or decreased profits of the bank immediately subsequent to the death of the insured constitute elements which should enter into the determination of the issue presented, viz., whether or not the funds involved herein are subject to income tax.

The appellee argues that this court should not follow the case of United States v. Supplee-Biddle Hardware Co., supra, but the reasoning and logic in said case are sound, and, as we conceive it, presents the proper solution to the problem involved.

The order of the Tax Commission is

vacated and the cause remanded, with directions to dismiss the proceeding.

BAYLESS, C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and RILEY, J., absent. DANNER, J., not participating.